# Appeal of the Liggett Spring and Axle Company, Limited.

1. A limited partnership at the request of one of its members, A, made a division of its profits and gave its note to him for his share of said profits, he agreeing to repay the same at maturity, and pledging at the same time as collateral security therefor, negotiable securities which he had previously pledged in a bank, and in whose possession they were for antecedent debts. The bank afterwards discounted the said partnership note for A, who used the proceeds to pay the bank for a previous loan. A afterwards to procure another loan pledged as general collateral the same securities. A did not pay the discounted note at maturity, but the limited partnership tendered the bank payment of the same and demanded the said collateral securities which the bank refused.

2. In a proceeding in equity between the limited partnership and the bank for the possession of these pledged securities: *Held*, (*a*) That the doctrine of bankers' liens is not the law in this Commonwealth. (*b*) That there were no equities between the limited partnership and A. (*c*) That the limited partnership could not loan its credit to A.

3. The doctrine of bankers' liens is opposed by a well established legal principle, and as a custom it cannot therefore obtain.

4. The pledge to a bank of negotiable securities for an antecedent debt not being founded upon a present valuable consideration, is to be taken subject to the equities subsisting between the pledgor and third parties:

Maynard *v.* The Bank, 2 Out., 250, followed.

November 10th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term, 1885, No. 7.

· This was an appeal by the Liggett Spring and Axle Company from a decree of said court dismissing a bill in equity, wherein the said, the Liggett Spring and Axle Company were plaintiff, and the Diamond National Bank the defendant.

The bill and answer were referred to James S. Young, Esq., as Master, whose findings of fact and conclusions of law were as follows:

The contention in this case is for the possession of four certificates of the Union Storage Company, which are negotiable, and represent about 403 tons of pig iron.

The plaintiff, the Liggett Spring and Axle Company, "Limited," filed its bill, alleging that on March 26th, 1883, it loaned to James Marshall, a member of plaintiff company, its promissory note for $7,000, dated March 26th, 1883, at thirty

days, and payable to the order of said Marshall, and that Marshall agreed at the same time to either pay the note or to repay to the plaintiff the amount of the note in case the plaintiff paid it when due, it being the intention of Marshall at that time to have the note discounted by the Diamond National Bank, the defendant, and that Marshall pledged to the plaintiff as security for his agreement the four certificates in controversy, which were at that time in the possession of the defendant as security for a loan.

It is further alleged that the said note was discounted by the defendant, and that when it became due the plaintiff tendered to defendant the amount of the note and demanded the certificates.

That the tender was refused and the certificates retained by the defendant.

The defendant, the Diamond National Bank, alleged in its answer, that the note of $7,000 was a dividend given by plaintiff to Marshall, being his share as a member of plaintiff company, of the undivided profits of said company, and denied that said note was loaned by plaintiff to Marshall.

The defendant further alleged that it held the certificates as general collateral for the note and for other loans to Marshall under an agreement with him to that effect, and that said agreement and loans were made to Marshall prior to any intimation from plaintiff that it had any claim upon said certificates.

The first fact to be determined is under what circumstances the certificates came into the possession of defendant.

The testimony shows that on March 9th, 1883, Marshall, who was at that time a borrower from defendant bank, asked Mr. Scully, cashier of the bank, to cash two checks of Marshall, drawn upon the Farmer's Deposit National Bank of Pittsburgh for $7,000, and left with the cashier as collateral security the four certificates in controversy.

The checks were cashed by the bank, Marshall receiving a New York draft for $7,000. On March 10th he called at the bank and exchanged checks with the bank, and this transaction was kept up from day to day, Marshall giving his check for $7,000 on the Farmer's Deposit National Bank, and receiving the check of the defendant bank for the same amount, until March 24th.

On Monday, March 26th, Marshall gave the bank the Liggett Spring and Axle Company note for $7,000, which was discounted by the bank and the proceeds used by Marshall in paying his check of March 24th.

When the note was discounted the certificates were still in the possession of the defendant bank.

It was contended by the plaintiff that the certificates were left with defendant as special collateral for the $7,000 loan and for no other purpose.

It was contended by the defendant that the certificates were not left with it by Marshall as special collateral for the $7,000 loan, but as general collateral for that loan and for all other indebtedness of Marshall to the defendant.

The Master finds that, while it is true that the certificates were first left on March 9th with the checks for $7,000, and were in the possession of defendant when it discounted the $7,000 note, that took the place of the checks, yet, there is no positive testimony that they were left as special collateral for that loan and for no other purpose.

The Master also finds that there was no understanding between Marshall and the defendant, that the defendant should hold the certificates as general collateral for all indebtedness of Marshall until April 11th, 1883, and that at that time all the indebtedness that the defendant claims to hold the certificates as general collateral for, except the sum of $827$\frac{89}{100}$, being the balance on the $3,000 check of April 11th, 1883, had been incurred, and that the advance was made on the $3,000 check of April 11th, 1883, upon the strength of the understanding that the four certificates were general collateral.

The next controverted question of fact is whether the $7,000 note was loaned to Marshall by the plaintiff company or was given him by it in payment of his share of the undivided profits of the company.

Plaintiff's own testimony shows that the company had $28,000 of undivided profits, but that the money had not yet been collected, and that the note under consideration was given to Marshall in payment of his share of the profits, but as the members of the company did not desire to use the profits but wished them to remain as part of the capital, it was agreed that Marshall should repay the amount of the dividend received by him, and he pledged the certificates as security for that undertaking.

The testimony of defendants shows that Marshall and Parke, also a member of the plaintiff company, represented to defendant that the $7,000 note represented Marshall's share of the undivided profits. This disposes of all the disputed questions of fact. The Master submits the following findings of fact:

1st. The plaintiff is a limited partnership under the Act of 1874 of the Commonwealth of Pennsylvania, and the defendant is a corporation under the banking laws of the United States.

2d. On March 26th, 1883, Marshall was a member of plaintiff company.

3d. That the $7,000 note of the Liggett Spring and Axle Company was given him by that company in payment of his share of the undivided profits of said company. The said division of profits having been made by plaintiff at the request of said Marshall and for the purpose of affording him relief.

4th. That on March 26th, 1883, when Marshall received the note he verbally agreed (subsequently on March 28th, 1883, reduced to writing) to repay the plaintiff the amount of said note, and pledged as collateral security therefor the four certificates in controversy, the said certificates being then in possession of defendant.

5th. That the four certificates in controversy were first deposited with the defendant by Marshall on March 9th, 1883, with his own check for $7,000, which were cashed by the defendant, and that the defendant exchanged checks with Marshall from day to day, from March 9th to March 24th, and that on March 26th the defendant discounted the Liggett Spring and Axle Company note for $7,000, giving Marshall the proceeds thereof, which were used by him in lifting his check of March 24th, the certificates still remaining with defendant.

6th. That the certificates were not deposited by Marshall with defendant under a particular agreement that they were to be collateral security only for the $7,000 loan.

7th. That on April 11th, 1883, there was an understanding between Marshall and Scully, cashier of defendant bank, that the four certificates in controversy were to be held by the defendant as general collateral for all indebtedness of Marshall to the defendant.

8th. That on April 11th, 1883, defendant advanced to Marshall, upon the understanding that the certificates were general collateral, the sum of $3,000, of which sum there is now owing to the bank the sum of $827.89, with interest on the sum of $744.79 from June 28th, 1884.

9th. That all the indebtedness for which defendant claims to hold the certificates as general collateral (except the amount of $827.89, with interest as set forth in the 8th finding) was antecedent to April 11th, 1883.

10th. That defendant had no notice of the claim of plaintiff upon the certificates in controversy until April 16th, 1883, or later, which was after defendant had made all the loans to Marshall for which it claims to hold the certificate as collateral.

11th. That plaintiff tendered to defendant the amount of its note and demanded the certificates, and that defendant refused the tender and to deliver the certificates.

Upon the above findings of fact two questions arise:

1st. Can the defendants hold the certificates as collateral security for the payment of the indebtedness of Marshall as against antecedent equities.

2d. What is the effect of the agreement to Marshall with the plaintiff to repay the $7,000 note ?  Are there any equities in the plaintiff under that agreement ?

As to the sum of $827.89 being the balance due on the $3,000 check of April 11th, 1883, there can be no doubt that the defendant can hold the certificates as collateral until it is paid, for the Master has found as a fact that the $3,000 of April 11th, 1883, was advanced on the strength of the certificates.  Neither is there any controversy as to the $7,000 note, plaintiff's theory of the case being that the certificates were pledged as collateral specifically for that note.

But as to all the other indebtedness of Marshall the question remains, for the Master has found as a fact that it was antecedent to April 11th, 1883, the date fixed by the testimony as the date when the understanding was had between Marshall and defendant, that the certificates were to be held by the defendant as general collateral.

The counsel for plaintiff contends that the rule prevails in Pennsylvania, that the pledgee of negotiable securities received by him as collateral security for an antecedent debt is not a holder for value, and is not protected from antecedent equities, and cites the following cases in support of his position : Maynard v. Bank, 98 Pa. St., 250 ; Davey's Appeal, 97 Id., 153 ; Petrie v. Clark, 11 S. & R., 377 ; Colbrook on Collateral Securities, § 23.

The counsel for defendant insists that the bankers' general lien is an exception to this rule, and in support of his position cites the following cases : Brandao v. Barnett, 12 Clark & Finley, 787, H. of L.; In re European Bank, L. R., 8 ch., app. 41 ; Sparhawk v. Drexel, 1 W. N., ch. 560 ; Bank of Metropolis v. New England Bank, 1 How., 239 ; Jones v. Peppercorn, 5 Jur., part 1, p. 140 ; Davis et al. v. Boush, 5 T. R., 488 ; Price to use, etc., v. Franklin Ins. Co., 13 W. N. C. 312.

The Master is of the opinion that the rule in Pennsylvania is, that the pledgee of collateral securities, which are negotiable, and which he takes for an antecedent debt, is not entitled to hold them as against antecedent equities.

The cases cited by counsel for defendant convince the Master that the rule is different from that above stated in the United States Courts, in England and other States, and that the general bankers' lien is recognized by them, but he is unable to find any case in Pennsylvania that decides that the bankers' general lien is an exception to the rule above laid down, except the case of Price to use, etc., v. Franklin Insurance Company,

[Appeal of the Liggett Spring and Axle Co.]

13 W. N. C. 312, which is a case decided by the. Common Pleas Court of Philadelphia, and not removed to the Supreme Court of this State.

If there were nothing else in this case the defendant would be unable to hold the securities as against the plaintiff, and this brings the Master to consider the second question, viz:

What is the effect of the agreement of Marshall with the plaintiff to repay the $7,000 note? Are there any equities in the plaintiff under that agreement?

The agreement of Marshall to repay the $7,000· note is in effect either an agreement to contribute $7,000 to the capital of the plaintiff company, or it is an agreement to loan the plaintiff company· the sum of $7,000.

If it was an agreement to contribute $7,000 to the capital of the company it would have no effect until· the articles of association, under the limited partnership act of 1874, were amended and recorded, and there would be no equity in the plaintiff until that was done. There is no proof before the Master that it was done; therefore, there is no equity in the plaintiff which would entitle it to the certificates.

If it was an agreement to loan the plaintiff $7,000, there arises no equity in the plaintiff upon his failure to lend the money, for what damages has the plaintiff suffered by reason of Marshall's failure to lend that amount of money to it?

The Master is, therefore, of the. opinion that there are no equities existing in the plaintiff—and the bill should be dismissed.

Between Marshall and defendant, there is need of no authority to sustain the proposition; that having received the money from the defendant, and having agreed with the bank that it should hold the certificates as .collateral for all indebtedness, the defendant is entitled to hold the certificates until it receives all it has loaned to Marshall, with interest, or it may dispose of the certificates and apply the money realized to paying the indebtedness of .Marshall to it.

The Master recommends that the bill be dismissed at the cost of the plaintiff.

The plaintiff filed exceptions to this report, all of which the court dismissed and in accordance with the recommendation of the Master ordered, adjudged and decreed that the plaintiff's bill be dismissed. The plaintiff thereupon took this appeal assigning for error. said decree of the. court dismissing the plaintiff's bill.

*D. T. Watson* (*J. H. White* with him), for appellant.
1. The pledgee of negotiable securities received by him as

[Appeal of the Liggett Spring and Axle Co.]

collateral security for an antecedent debt is not a holder for value, and is not protected from antecedent equities.

2. While it is true that Marshall's share of the undivided profits of the appellant amounted to $7,000, the evidence shows and the Master found that the company did not propose to distribute this profit among its shareholders, but desired to retain the same as a working capital.

" When profits arise, shareholders have no unconditional right to their immediate distribution as dividends. The managers of the company are impliedly invested with a discretionary power with regard to the time and manner of distributing its profits. They may apply profits in payment of debts or in development of the company's business, or retain it for future use as a surplus fund ": Morawetz on Private Corporations, § 348.

3. A statute prohibiting a loan by companies, or the making by them of accommodation paper, is intended solely for the benefit of the company. shareholders, and a person receiving the benefit of such a loan cannot avail himself of the prohibition by statute of such loans, as to him the violation of the statute is collateral : Roberts v. Lane, 64 Me., 113 ; Bank v. Fall, 71 Id., 49 ; Bank v. Porter, 125 Mass., 333 ; Daniel on Negotiable Instruments, § 386.

*W. B. Rodgers* for appellee.—1. There are no equities in the appellant for the reason and under the authority stated by the Master.

2. As to the banker's lien. The banker's general lien attaches to all funds and securities deposited with him by his customer, as against not only his customer, but the secret equities of third parties: Colbrook on Collateral Securities, § 62 ; Davis v. Bowsher, 5 T. R., 491. Securities may be held for a general balance, unless they were deposited under an express contract, or circumstances that show an implied contract inconsistent with the general lien: Bank of Metropolis v. New England Bank, 1 How., 239; Swift v. Tyson, 16 Peters, 1; U. S. Bank v. Macalester, 9 Barr, 482; Price, for use, v. The Franklin Fire Insurance Company, 13 W. N. C., 312.

If the banker's general lien exists in Pennsylvania as it exists all over the commercial world, then the appellee is entitled to hold these certificates for its general balance: In Brandao v. Barnett, 12 Cl. & Finn., 787.

It is argued on the other side, that the transaction was a loan of the credit of the company, and although illegal under the statute, Marshall is estopped, nor could the appellee avail itself of such illegality.

If the transaction be susceptible of two constructions, one

legal and the other illegal, the law would prefer that which is legal.

But, suppose it was a loan, how would the case stand?

"After the execution of an illegal contract or purpose, the money paid under it whether as the consideration or in performance of it cannot be recovered back, for the parties are then equally delinquent, and the rule applies that *in pari delicto melior est conditio possidentis*: Leake on Contracts, p. 775.

In this case the note is that of the Liggett Spring & Axle Company to the order of and indorsed by Marshall.

If Marshall were sued by the Liggett Spring & Axle Company to recover that money, and he plead *non assumpsit*, how could the company avoid showing the illegal transaction? Johnson *v*. Hulings, 13 W. N. C., 496.

Mr. Justice GORDON delivered the opinion of the court, January 4th, 1886.

The findings of the Master, about which there is little or no dispute, make the case in hand sufficiently clear and intelligible. It is admitted that the defendant bank is entitled to hold the four warehouse certificates, deposited with it on the 9th of March, 1883, as general collateral security, until it has realized the plaintiff's seven thousand dollar note, and the balance of the three thousand dollar loan to Marshall of the 11th of April, 1883. But the contention is that, as the plaintiff, to whom Marshall had previously pledged the certificates as security for the note above mentioned, which, it is alleged, was but a loan of the company's credit to him, the bank cannot hold them on account of the precedent indebtedness of Marshall to it. As to this, the Master has well found that, admitting the validity of the company's claim, the position thus assumed is correct. According to the doctrine as established by Maynard *v*. The Bank, and many other cases, the pledge of negotiable securities for an antecedent debt not being founded upon a present valuable consideration, is to be taken subject to the equities subsisting between the pledgor and third parties. The principle here stated is too well established to be shaken by decisions extra this Commonwealth, or by an attempt to introduce the doctrine of bankers' liens. A doctrine which, however it may agree with the policy of other states, has no place in our own. How a custom of this kind could obtain in the face of a well established legal principle, we cannot conceive, for an elementary condition of a custom is that it be lawful, and without this it is vicious and void.

Agreeing then, as we do, with the Master in this particular,

we next come to the inquiry: "What is the effect of the agreement of Marshall with the plaintiff to repay the seven thousand dollar note? Are there any equities in the plaintiff under that agreement? In this the decision of the Master is adverse to the company, and, as we think, rightly. When we look at the copy of the company's minutes, dated March 26th, 1883, and also consult the testimony of Mr. Hugus, we find, (1.) That at that date the undivided profits of the partnership amounted to something over twenty-eight thousand dollars. (2.) It was determined by the meeting of the partners then held, to declare a dividend of these profits, and in pursuance · of this action, the seven thousand dollar note was issued to Marshall. Now, there is no way of avoiding the fact that the dividend thus ordered belonged to Marshall, and that the note was but the equivalent of a certificate of indebtedness for that amount. What then does the agreement to return this money within thirty-four days from the date thereof amount to? The company had, by its resolution determined the ownership of this money, and if the agreement to refund was based on any consideration whatever, it should have been made to appear. Not only was there no proof of such consideration, but there is not even an apparent reason for an arrangement of this kind. The plaintiff did not propose to increase its working capital, nor is there evidence to support the idea that it had in view any special purpose to which it could apply this fund. This money was in its treasury as so much undivided profits, and as the amount thereof represented by the seven thousand dollar note actually belonged to Marshall, we must take it that the agreement to refund was either of no binding force whatever, or depended on some condition that never occurred. In fact, no other hypothesis concerning this note can be entertained; for if it was a loan of the credit of the company to one of its members, it was unlawful and could not be enforced. The 7th section of the Act of the 2d of June, 1874, expressly declares: "It shall not be lawful for such association to loan its credit, its name or its capital to any member of said association." We need not cite cases to show that an unlawful obligation cannot be enforced in a court either of law or equity.

It follows, that Marshall might, as he did, repudiate his agreement with the company, and otherwise dispose of the securities according to his own will and pleasure.

　　　　　The appeal is dismissed, the decree affirmed, and
　　　　　it is ordered that the appellant pay the costs.