GEORGE C. EYRICH, ADMR. *v.* CAPITAL STATE BANK.

1. ESTATE OF DECEDENT: CLAIM AGAINST. *Distribution. Code* 1880, § 2076.
    This section, which provides for distribution after twelve months from the grant of letters testamentary, refers to distribution to heirs and legatees, and not to the right of the executor to pay, or of a creditor to sue for a debt due by the testator.

2. SAME. *Stipulation for attorneys' fees. Suit against administrator within twelve months.*
    In a suit against an administrator upon a note of his intestate which provides for the payment, in addition to interest, of a reasonable attorney's-fee, if suit should be necessary to collect it, he cannot defend against the claim for such fee merely upon the ground that the suit was brought within the twelve months allowed after grant of letters before distribution.

3. CHANCERY COURT. *Jurisdiction. Quantum of attorney's fee.*
    Where suit on such a note is in the chancery court, that court has full jurisdiction to fix the quantum of the fee and include it in the decree.

4. SET-OFF. *Mutuality of demands. When joint demand may be set off.*
    A demand in favor of the defendant against the plaintiff and another jointly and severally bound may be set off against the plaintiff suing alone. *Moody* v. *Willis,* 41 Miss. 347.

5. SET-OFF. *Mutuality: rule, when not applied in chancery court. Administration of estates.*
    Since the statutory jurisdiction of the chancery court over suits on purely legal demands against estates of decedents is merely incidental to the

administration, a complainant in such a suit cannot by joining as a defendant a party jointly liable with the intestate, preclude the administrator from pleading as a set-off a debt due by complainant to the intestate. The rule requiring mutuality in cases of set-off will not be applied under such circumstances.

6. SET-OFF. *Rules applicable to banks.*
   The rules of law as to the right of set-off between the bank and its depositors are not different from those applicable to other parties.

7. BANKS. *Counter claims; may apply fund of depositor. Joint indebtedness.*
   A bank may apply the amount to the credit of a depositor to a debt due to it by such depositor jointly with another.

8. SAME. *Duty as to payment of checks. Private memoranda.*
   Ordinarily a bank has no concern with the application of money paid out by it upon properly signed checks, nor is it bound to take notice of private memoranda upon checks presumably made for the information of the drawer.

9. PAYMENT OF CHECKS: DUTY OF BANK. *Application of the fund. Partnership.*
   Where a check properly signed in the firm-name is presented to a bank having on deposit funds of the partnership, although there are circumstances known to the bank or some of its officers which would suggest doubts as to the destination of the fund, and an investigation would disclose to what purpose the funds were being applied, the bank is not bound to refuse payment and suspend its ordinary course of business to satisfy itself as to the proper application of the fund.

10. SAME. *Partnership funds. When bank not liable for misapplication by partner.*
    If a partner checks in the firm-name against the partnership funds in a bank, fraudulently intending to apply the money to his individual use without authority, and does so apply it, the bank is not liable to the remaining members of the firm unless there is either a fraudulent purpose on the part of the bank or actual knowledge of the fraudulent design of such partner.

11. PARTNERSHIP. *Loan in firm-name for partner's use. Knowledge of lender.*
    A partnership is not bound to a bank for a loan obtained from it by a partner in the firm-name, but without authority, if the bank knew that the partner was borrowing the money for his own use in the payment of a debt due by him individually to the bank.

FROM the chancery court of Hinds county, first district.
HON. WARREN COWAN, Chancellor.
As will be seen from the statement of facts in the opinion, the

controversy arises mainly over the action of the appellee, the Capital State Bank, in applying the funds on deposit to the credit of P. T. Baley to the payment of the $500 note given in the firm-name of W. C. Rogers to the bank.  It is not denied that Baley and Rogers were partners as druggists under the firm-name of W. C. Rogers, and that Rogers borrowed the $500 from appellee, stating that it was for the benefit of the firm.  Of the money borrowed $400 was at once paid to the bank to settle sundry drafts held against the firm and $100 was retained by the bank, by the direction of Rogers, to pay the interest due on the $1500 note now in suit, and as to this note the bank knew that Rogers was principal and Baley merely a surety.

After this Baley purchased from Rogers his interest in the firm, and assumed in writing to pay all the firm liabilities.  He caused a circular letter to be sent to the creditors of the firm, advising them of his purchase and assumption of the debts, and the bank received one of these notices, after which, as Baley refused to pay the $500 note, it charged it to his individual account.

It appeared in evidence that the partnership was conducted in the name of W. C. Rogers, one of the partners; that Rogers had the exclusive management of the business and received also a salary for his services; that the account at the bank was opened when the firm began business, and that Rogers had no credit or account with the bank separate from the firm account.  Many of the checks drawn against this fund were for debts due by Rogers individually, and many of these contained memoranda, which, if noticed and understood by the bank, might have shown that they had reference to the individual business of Rogers, and were drawn in payment of his private accounts.  No objection to this course of dealing had ever been made by Baley, but he had on one or two occasions himself presented to the bank and collected checks thus drawn by Rogers in payment of debts due to him individually by Rogers.

Upon final hearing the court rendered a decree in favor of complainant against the appellant and Rogers for the amount of the note sued on, interest, and attorney's fees, fixing the latter at ten per cent. upon the $1000 admitted to be due and fifteen per cent.

upon the litigated sum of $500.   The other facts are stated in the opinion.

*Calhoon & Green,* for appellant.

1. While a bank has a lien on moneys on deposit to secure debts due by the same person and in the same right, this right is merely *defensive.*   " The opposing claim and property must be due to and from the same two funds.   The lien and right of set-off only exist when the individual who is both depositor and debtor stands in both these characters in precisely the same relation and on precisely the same footing towards the bank."   1 Morse Banking, § 326.   The bank then had no lien upon the individual deposit of Baley and no right to apply his deposit to the debt of the firm of W. C. Rogers & Co.

A customer can upon making a deposit direct to which of several accounts it must be applied.   A bank must preserve the distinction between accounts.   1 Morse Banking, § 327.   Hence the bank had no right to transfer any firm debt to Baley's individual account; *a fortiori,* not against his instructions, and especially not a *disputed firm debt.*

The right of the creditor to appropriate arises only where the debtor does not manifest his intention as to the application of the payment.   Munger Appl. Pay'ts, 32.   The application cannot be made to a disputed debt.   *Stone* v. *Talbot,* 4 Wis. 463.

2. It is claimed that the answer pleads a set-off and that this is not available for want of mutuality.   But this is not a question of set-off, but of the application of payments.   The bank applied the deposit one way while appellant claims it was its duty to apply it another way.   Again, if the mutual accounts between the parties cannot be settled in this suit, but such settlement is to be defeated by the presence of Rogers as a co-defendant, the court is without jurisdiction.   Jurisdiction was defeated by petitioner's own election, for it could have sued the administrator alone.   Code 1880, § 1134.   Jurisdiction was conferred on the chancery court in suits against estates in order that there should be a full settlement of the administration, and this will not be defeated by the joinder of another defendant.   The rule announced in *Bullard* v. *Dorsey,* and *Moody*

v. *Willis*, 41 Miss. 347, will not be applied under the present code, in view of § 1733, which permits judgments to be rendered for or against one or more of several plaintiffs or defendants, and authorizes as many judgments in one suit as may be necessary to settle the rights of the parties.

3. The real merits of this suit depend upon whether the $500 note charged to the account of Baley was the partnership note and debt of W. C. Rogers and P. T. Baley or the individual debt of Rogers. As the individual and partnership name was the same, the presumption is that the debt was that of the partner alone. " *Prima facie* a note, and *a fortiori*, an account in the name common to the individual and the firm, is that of the individual. 1 Bates Part., § 443.

A partner cannot check against firm funds to pay his individual debts without express authority, and, if he does, it is a fraud for which the other partners can hold the bank responsible in equity. *Homer* v. *Wood*, 11 Cush. (Mass.) 62; *Church* v. *Bank*, 87 Ill. 69; 1 Lindley Part. (Rapalje Ed.) 194, note.

The individual accounts of the partner should be kept as separate as individual accounts between a partner and a stranger to the firm. *Honore* v. *Colemesnill*, 1 J. J. Marsh. 517.

Where the signature of a note is that of a member which is also that of the firm, in order to bind the firm it is necessary not only to prove the signature, but that it was used as the partnership signature and for partnership purposes. *U. S. Bank* v. *Bunney*, 5 Story 184.; *Winship* v. *U. S. Bank*, 5 Peters 565. See also Lindley Part. 184. The true rule is laid down in *Rogers* v. *Batchlor*, 12 Peters 232, where it is held that one partner cannot apply partnership funds or securities to private debts so as to bind the firm, and the right of the creditor depends not on his knowledge that it was partnership property, but upon the fact whether the other partners consented to such disposition. *Buck* v. *Mosley*, 24 Miss. 172. See, also, *Stegall* v. *Coney*, 48 Ib. 768; *Minor* v. *McGraw*, 11 S. & M. 326.

4. The proof shows that Rogers carried his private funds as well as firm moneys into the same bank account kept in his name.

This was at least a mingling of trust funds and the account as against him, and the account will be deemed his private account. Perry on Trusts, § 463. As to the power of Rogers to bind the firm by this loan, see, also, *Pickles* v. *McPherson*, 59 Miss. 217 ; *Robinson* v. *Aldridge*, 34 Ib. 352. The bank knew that Rogers was applying the money to his own uses. This appeared from the memoranda on the checks in many instances, and the checks were not drawn in the due course of trade. In any event the bank had knowledge of enough facts to put it upon inquiry. As $100 of the money borrowed was at once applied by Rogers to the payment of the interest due by him on the $1500 note to the bank, the latter of course knew this much of the loan was not for partnership purposes.

5. It was error to allow attorney's fees. The clause in the note pertaining to fees cannot be enforced in equity. Defendant was entitled to a trial by jury on the amount of damages. But especially in this case, because this suit was brought before the expiration of twelve months after letters of administration and before the administrator could be compelled to pay debts or make distribution. Code 1880, §§ 2026, 2076. Besides, the administrator has never refused to pay as to the $1000 balance, but was always willing, and in his answer offered to pay if the bank would apply the amount to the credit of the intestate to the note sued on instead of the note for $500 claimed to be due by the firm. Complainant cannot, to get the attorney's fees, litigate for the whole when only a part is in dispute.

Argued orally by *M. Green*, for appellant.

*Brame & Alexander*, for appellee.

1. The fact that another party jointly liable with the estate was joined as a defendant, does not affect the jurisdiction of the chancery court. If Rogers was improperly joined he alone could object, and if there was error as to him, appellant cannot avail of it. Code 1880, § 1440. The jurisdiction was complete; *Hunt* v. *Potter*, 58 Miss. 96; and as no objection was made as to this in the lower court it cannot be urged here, notwithstanding an adminis-

trator is not bound to plead specially. *Prewitt* v. *Coopwood,* 30 Miss. 385; *Black* v. *Washington,* 65 Ib. 60; *Duncan* v. *Scott,* 64 Ib. 38; Code 1880, § 1512. The fact that the note calls for attorney's fees does not affect the jurisdiction. This stipulation, like that for interest, arises *ex contractu.* If a jury trial were proper the court would award it, but no such trial was asked.

2. As to the application of payments. Long before the note in suit fell due Dr. Baley had bought out the firm of W. C. Rogers (W. C. Rogers and P. T. Baley), and in writing assumed to pay all the firm debts, and had mailed to the bank a letter to that effect. Among these firm debts was the note for $500 past due, and in *accordance with this* letter the bank charged the note to the individual account of Baley. Even if it did not thus become the individual debt of Baley, but remained the firm debt, the bank had the right to charge it against the individual account of Baley, the partner. It could have used the note as a set-off if sued by Baley, therefore it could apply it to his account. 1 Daniel Neg. Inst., § 326 b; 1 Morse on Banking, §§ 325, 328.

3. But appellant when sued jointly with Rogers could not plead as a set-off a debt due to him alone by the complainant. *Bullard* v. *Dorsey,* 7 S. & M. 9; *Peine* v. *Lewis,* 64 Miss. 96; *Walker* v. *Hall,* 66 Ib. 390. Rogers, as one jointly liable, was a proper party, and his presence could not change the rule. Appellant cannot object for Rogers. The rule requiring mutuality is not changed by § 1733 of the code. Several cases have been decided since the adoption of the code, all holding that mutuality is essential in set-off. *Peyton* v. *Compress Co.,* 63 Miss. 410; *Peine* v. *Lewis, supra; Walker* v. *Hall, supra.*

4. The $500 note was for a firm debt. The proof is clear that Rogers had no individual account and had no credit with the bank. Borrowing money was within the scope of the business, and Rogers stated that the loan was for partnership purposes. This statement was binding on the firm, no matter what he did with the money. *Faler* v. *Jordan,* 44 Miss. 283; *Silverstein* v. *Atkinson,* 45 Ib. 80; *Helm* v. *Bloom,* 53 Ib. 21. But the money was not misapplied. It went to pay drafts against the firm, with the exception of $100, which went to pay interest on the joint note of Baley and

Rogers to the bank.  Even if there was bad faith in one partner, if the transaction was within the scope of the business, the other partners must suffer and not an innocent stranger.  Wade on Notice, 481, 483.

5.  Failing to show that the $500 note was not for a firm debt, appellant seeks to base a counter claim upon the fact that the bank paid many checks drawn by Rogers against the firm account to pay his individual debts.  The checks were all properly signed and there was only one account.  It was the duty of the bank to pay the checks.  When a check is presented the bank is only required to know if the signature is genuine.  2 Morse on Banking, 439; 2 Daniel Neg. Inst., § 1612.  The very idea of a check is that it is to be paid immediately.  2 Daniel Neg. Inst., §§ 1572, 1575.  A bank is absolved if the signature is correct.  2 Morse on Banking, 432, 433.  It would greatly interfere with the business of banks and their utility if they were bound to stop and inquire into the purpose of every drawer of a check as to the disposition of the money.  Nor is a bank bound to take notice of memoranda on checks.  These are merely for the information of the payee or the convenience of the drawer.  To require of a bank to know the destination of all moneys paid out by it on checks would destroy the banking business and work great hardship on the public.  If a partner, for convenience, checks in the firm-name to pay his own debt, the presumption must be that he has authority of the firm or that he properly charges himself on the firm books.

6.  The attorney's fee was properly allowed.  The testimony showed it was a reasonable fee.  The administrator never offered unqualifiedly to pay even the admitted indebtedness of $1000, and does not even yet offer to do so, except upon condition that the bank release all claim against the estate for the $500 note.  It was therefore necessary to sue for the entire sum.

*L. Brame*, of counsel for appellee, made an oral argument.

COOPER, J., delivered the opinion of the court.

The Capital State Bank exhibited the bill in this cause in the chancery court of Hinds county, in which court administration of

the estate of P. T. Baley was pending, against Eyrich, adminis-
trator of Baley, and one Rogers, to enforce the payment of a cer-
tain joint and several promissory note made by Rogers and Baley
to the bank for the sum of one thousand five hundred dollars.
The note contains a stipulation that if it is not paid at maturity
the maker would pay a reasonable attorney's fee.   As between the
makers of the note, Rogers was principal and Baley surety, and
this fact was known to the bank.

Rogers made no defense and decree was rendered against him for
the sum claimed.   Eyrich, administrator, admitted the execution
of the note and his liability to pay so much of the sum named
therein as remains unpaid, subject to a set-off of five hundred dol-
lars, but objected that suit could not be brought against him until
after the lapse of twelve months from the grant of administration
to him of said estate, which time had not elapsed when the bill was
filed.   The twelve months permitted to an administrator before
distribution, refers not to distribution in payment of debts, but to
the parcelling of the estate to the distributees.

The administrator claimed as a set-off the sum of five hundred
dollars which his intestate had deposited in said bank to his indi-
vidual credit, and which sum he contends has never been properly
accounted for by the bank.   The bank admits that such sum had
been held by it to the credit of the intestate, but shows that before the
maturity of the note here sued on, the firm of W. C. Rogers, com-
posed of said intestate and W. C. Rogers, was indebted to the bank
in the sum of five hundred dollars, evidenced by an overdue promis-
sory note, executed by said firm for money loaned by the bank ; that
this note was presented to Baley and payment demanded, which
he refused to make, whereupon the bank (there being no credit on
its books for said firm) applied the credit standing in the name of
the intestate to the payment of said note.   The bank contends *in
limine* that since its bill is against the administrator of Baley and
Rogers, a demand in favor of Baley alone cannot be set off, the
demands not being mutual.

This position is not maintainable; this is not a suit at law, nor
is it one which could be maintained in equity upon general princi-

ples, being for the enforcement of · a purely legal demand.   But since the estate of Baley is being administered in the court in which the bill is exhibited, the court, as a mere matter of administration, has under our constitution and laws jurisdiction to examine into its validity and enforce its payment.   *Hunt* v. *Potter,* 58 Miss. 96. But the complainant cannot by joining in the proceedings another defendant, jointly liable with the intestate at law, preclude the administrator from setting up in discharge of the liability of the estate a debt due by the creditor to the intestate.   Without regard to the character of the demand asserted against the estate, as one due by the intestate alone, or by him jointly with another, the rights of the parties will be settled just as though the obligation was that of the estate alone, even though it was made jointly with another and that other is without objection on his part, or by the administrator improperly joined as defendant in the proceeding. The jurisdiction of the court is auxiliary and incidental to the administration of the estate.   The objection taken by the administrator to the allowance of an attorney's fee is without merit. The intestate promised to pay not only the principal sum named in the note and interest, but also a reasonable attorney's fee in event suit should be necessary to collect the debt.   There is no more difficulty in fixing the quantum of such fee than exists as to all matters not liquidated by the terms of a contract.

The next question presented arises from the objection made by the administrator to the act of the bank in applying the individual deposit of Baley to the payment of the $500 note it held against the firm of W. C. Rogers, of which firm Baley was a partner.   This note was due and unpaid, and months before the maturity of the note now sued on, the bank, against the objection of Baley, charged it up to his private account, thus absorbing his individual deposit.

Counsel for the administrator insist that the right of set-off by the bank exists only where the individual who is depositor and debtor, stands in both these characters in precisely the same relation and on precisely the same footing toward the bank.   In support of this position they rely upon the text of Morse on Banks and Banking, vol. I, sect. 326, and the authorities there cited.   The question was

propounded from the bench during the argument, whether any different rule applied to a banker than to any other person, to which counsel replied in the affirmative, on the authority above noted.

We have examined the text of Morse and the authorities cited by him (except *Ex parte McKenna*, 30 L. J. Bank. 20, to which we have not access), and do not think either the text or the authorities cited support the view advanced by counsel. Section 334 of the same volume deals with the right of set-off by the bank, but there is no suggestion that a bank may not avail itself of the right in any case in which another might do so. We have found no case in which a different rule has been applied to banks, and we are aware of no principle upon which it could rest. Morse but asserts as applicable to bankers the rule which is of general application, that to warrant set-off there must be mutuality in the character of the demands. The cases cited by him are *Watts* v. *Christie*, 11 Beav. 546 ; *Ex parte McKenna*, 30 L. J. Bank. 20 ; *Dawson* v. *Bank*, 5 Pike (Ark.), 283 ; *Liggett Spring Axle Co.'s Appeal*, 111 Pa. St. 291, and *International Bank* v. *Jones*, 119 Ill. 407.

In *Watts* v. *Christie*, after insolvency of the bank, an individual depositor directed the bank to apply his deposit to the credit of his firm which was indebted to the bank. This the bank refused to do, and the firm sought to obtain the benefit of the individual deposit. Other arrangements of similar character had been acquiesced in by the bank, and the master of rolls very strongly intimated that an unfair preference had been thus given to those securing transfers, which could be set aside by creditors of the bank. The authority seems to proceed to the extent that even by the consent of the depositor and the bank, the transfer could not have been made. In *Dawson* v. *Bank*, 5 Pike, 283, it was held that a bank could not apply the deposit of an individual to the payment of a debt due by a firm of which he was a member. This was put upon two grounds, one that the charter of the bank prohibited such set-off, the other because the debts were not mutual. On the latter ground this decision followed and was based upon *Trammell* v. *Harrell*, 4 Pike, 602, in which it had been held that under the statute of that state controlling set-off, a defen-

dant could not set off the joint and several obligation of the plaintiff to himself.    This decision was afterwards overruled in *Leach* v. *Lambeth*, 14 Ark. 668.

In *International Bank* v. *Jones*, 119 Ill. 409 ; *Coates* v. *Preston*, 105 Ib. 473 ; *Gregg* v. *James*, Breese, 143 ; *Burgwyn* v. *Babcock*, 11 Ill. 28 ; and *Hilliard* v. *Walker*, Ib. 64, it is settled that partnership contracts are not joint and several under the statutes of Illinois so as to permit a defendant sued by a single partner on his own demand to set off the debt due him by the firm. *Liggett Spring Axle Co.'s Appeal*, 111 Pa. 291, does not touch the question involved.    In none of these cases is there anything said indicating that a bank if sued would be controlled by any other rule than would apply to other defendants.    But it is settled in this state that a demand in favor of the defendant against the plaintiff and another, jointly and severally bound, may be set off against the plaintiff suing alone.    *Moody* v. *Willis*, 41 Miss. 347. If the bank had been sued by Baley it might have set off any demand it had against the firm of which Baley was a member, and might, because it could, apply his credit to the debt due by said firm.

The next objection taken by the administrator to the appropriation of the sum due to the intestate to the $500 note of the firm is that Rogers had drawn checks on the firm account in favor of third persons and in satisfaction of his individual debts, and that the bank had ·with knowledge of such misappropriation, or with sufficient notice to put it on inquiry, paid out the firm deposit on such checks and thus participated in the misapplication, by reason of which it should be made to replace such sums and apply them to the satisfaction of the said note.

It appears from the evidence that Rogers, who was the son-in-law of Baley, was introduced by him to the bank, and information given that Baley was a member of the firm of W. C. Rogers, and that he wanted Rogers to keep his account with said bank. It is not positively shown that Baley knew the account was afterwards so kept, but on one occasion he received a check from Rogers on the bank in payment of a private debt due by Rogers to himself, which check was paid by the bank.

Some of the checks drawn by Rogers on the firm account contained on their faces memoranda from which it is argued that the bank should have inferred that he was applying the firm assets to the payment of his private accounts, and should have declined to honor the checks so drawn.

There is no suggestion that the bank derived any benefit from any of these payments, or had any sort of interest in them, or procured them to be made. The broad proposition is announced that it was the duty of the bank to protect the interest of Balcy by scrutinizing checks drawn by Rogers, and by declining to pay such as it suspected were drawn in favor of his individual creditors.

It is not suggested either by the argument or the evidence that the bank knew that Rogers was appropriating the firm's money to the payment of his own debts, otherwise than from the fact that the checks sometimes bore private memoranda, presumably put there for his own information and not as directory to the bank. Neither our own researches nor the result of the labor of counsel has disclosed a case in which, under such circumstances, liability has been fixed upon the bank for checks so paid. True it is that a bank may not participate in the misapplication of the deposit left with it by a firm by accepting checks drawn on it in payment of the individual debt of the partner to the bank. But ordinarily the bank has no concern in the destination of a fund for which a proper check is presented at its counter. The confidence that Rogers would apply the funds of the firm only to firm purposes was one reposed in him, not by the bank but by Baley, his partner: It had a right to assume, in the absence of strong proof to the contrary, that this confidence was not being abused, and to act with reference to such presumption. Banks are not trustees of their depositors in that sense that they must see to the application of funds drawn by those entitled to check against them. In the multiplicity of business transactions innumerable instances must occur in which circumstances known to the bank, or some of its officers, would suggest doubts as to the destination of funds checked against, which circumstances, if investigated, would disclose to

what purposes the funds were being applied.    But it has never
been suggested that the bank may properly, much less that
it ought as a duty to the beneficiary of the fund, suspend its
ordinary course of business that it may satisfy itself as to
the right of him authorized to draw out the fund to so apply
it.    Where there is not a duty to act there can be no responsi-
bility for failing to act, and it must be held that banks discharge
their duty to depositors when, in good faith, they disburse the
funds held by them in compliance with the direction of him who
has the right to direct such disbursement.    There ought to be
either a fraudulent purpose on the part of the bank, or actual
knowledge of a fraudulent design by another shown, before lia-
bility can be fixed on it for paying out funds on checks signed
by him authorized to draw.    In *Gray* v. *Johnston*, L. R. 3 Eng.
& Irish App. Cases, an executrix gave a check in favor of a firm
in which she was a partner for the whole fund of the estate of
which she was the representative.    On proceedings to charge the
bank with the funds, which were lost to the estate, the lord chan-
cellor said :    " On the one hand, it would be a most serious matter
if bankers were to be allowed on light and trifling grounds—on
mere suspicion or curiosity—to refuse to honor a check drawn
by their customer, even though that customer might be an executor
or administrator.    On the other hand, it would be equally of serious
moment if bankers were to be allowed to shelter themselves under
that title, and to say that they were at liberty to become parties or
privies to a breach of trust committed with regard to trust property,
and, looking to their position as bankers merely, to insist that they
were entitled to pay away money which constituted a part of the
trust property at a time when they knew it was going to be misap-
plied, and for the purpose of its being so misapplied.    I think, for-
tunately, the law on that point is clearly laid down, and may be
derived without any hesitation from the authorities which have
been cited at bar, and I apprehend that the result of these au-
thorities is clearly this :    In order to hold a banker justified in
refusing to pay a demand of his customers, the customer being an
executor, and drawing a check as an executor, there must, in the

first place, be some misapplication, some breach of trust, intended by the executor, and there must, in the second place, be proof that the bankers are privy to the intent to make this misapplication of the trust estate." See, also, *Goodwin* v. *American National Bank*, 48 Conn. 550.

There is no pretense of privity on the part of complainant in any misapplication of the funds of the firm of W. C. Rogers by the managing partner; the argument is, that if investigation had been made by the bank, the contemplated misappropriation would have been discovered, and that the bank had such notice as made it its duty to refuse payment of the checks drawn until investigation could be made.

The remaining objection taken by the administrator to the note of $500, paid by the application of the intestate's private credit, is that it was not given for a partnership debt, nor for money loaned to the partner (Rogers) in the partnership affairs.

As to $400 of the sum represented by the note, it appears to have been borrowed by Rogers, and actually applied to the payment of commercial debts contracted by the firm in the due course of business. But as to the remaining $100, the objection is well taken. This sum was borrowed by Rogers from the bank to be applied to the payment of the interest then due on the $1500 note executed by himself and Baley, and payable to the bank. The bank knew this to be not a partnership debt, and as the money borrowed was to this extent at once applied to the payment of interest on this note, it was in legal contemplation a loan to Rogers for his own use, and being such the bank was chargeable with knowledge of his want of power to bind his partner. It knew all the facts, and the legal consequences which flowed from them it is conclusively presumed to have known.

The decree is erroneous, in so far as it allowed credit to the bank for this sum,

*And for this reason must be reversed. A decree may be entered here for the proper sum. The costs of the appeal to be taxed against appellee; the costs of the court below against appellant.*