ARMOUR-CUDAHY PACKING CO. *v.* FIRST NATIONAL BANK OF GREENVILLE, MISS.

1. BANK.    *Checks of depositor.    Rights of another.    Notice.*

   Ordinarily a bank must honor the checks of its depositor, but if it has notice that the deposit belongs to another, payment of the checks of the depositor will be at its peril.

2. SAME.    *Trust.    Misappropriation.    Liability of bank.*

   If there is misappropriation of a trust-fund by a bank, or, if, with knowledge that money deposited with it is held in a fiduciary character, it participates beneficially in a misappropriation, it is liable to the true owner. *Eyrich* v. *Bank,* 67 Miss., 60.

3. SAME.    *Disposition of deposit.    Instructions.    Estoppel.*

   While ordinarily a bank is not required to obey verbal instructions of the depositor touching the disposition of the deposit, yet, if it accepts his verbal direction, expressly or by fair implication, consenting to be governed thereby, it will not, after the money has been paid out, be heard to say that it was only required to follow written directions.

From the circuit court of Washington county.

Hon. R. W. Williamson, Judge.

Action by appellant against the First National Bank of Greenville, Miss., to recover $1,047.60, alleged to have been deposited with the bank, as the money of plaintiff, by one Lamon.

It appears that on the eighteenth day of January, 1889, plaintiff, doing business in South Omaha, Neb., consigned a car-load of meat to Lamon, at Greenville, and, at the same time, drew a draft on him for $1,524.96, the price of the meat, and the draft was sent to the defendant bank for collection. The car was delayed, and did not reach Greenville for several weeks. Before it reached there the bank returned the draft to plaintiff. The car finally arrived, and was delivered to Lamon, who testified that he notified the bank that he had received it. He also testified that he notified the bank that he was disposing of the meat as the agent and for account of plaintiff; that the proceeds of sale were deposited in the bank, and that the officials were notified by him of the source from which the money arose, and that it belonged to plaintiff. The account of Lamon at the bank was kept in his own name, but his pass-book was introduced, showing certain entries mentioned in the opinion of the court. He testified that these were made to indicate the amounts collected on account of the meat, and to advise the bank of the source from which the money was received. It appears that he had disposed of the meat, and collected all the proceeds, by about the first of March. After that he made deposits, and drew checks upon the bank against his balances. He testified that, some time after the deposits had been made, he ascertained that the money had not been remitted to plaintiff by the bank, as agreed, and that he called on the bank in regard to the same, and was informed that all amounts deposited by him had been applied to the payment of his account, which was overdrawn. The officers of the bank contradicted, in

the main, the testimony of Lamon as to any notice of plaintiff's rights. The other facts necessary to an understanding of the case are stated in the opinion.

The court gave a peremptory instruction in favor of defendant, and judgment was entered accordingly, from which the plaintiff appeals.

*Yerger & Percy*, for appellant.

A peremptory instruction is improper, where a verdict, rendered on the facts adduced, would be allowed to stand, or where there is doubt. *Swann* v. *Insnrance Co.*, 52 Miss., 704; *Dillon* v. *Patterson*, 66 *Ib.*, 204; *Lowenstein* v. *Powell*, 68 *Ib.*, 73.

The testimony of Lamon shows that the bank had full notice of plaintiff's rights; that the car-load of meat belonged to it, and that the proceeds were deposited as the property of plaintiff, and that the bank was requested to remit the amount accordingly. This testimony is corroborated by the facts and circumstances of the case, and the question at issue should have been submitted to the jury.

It is not necessary to prove any privity of contract with the bank, other than such as arose out of the fact that it had received plaintiff's money, and failed to pay it over. *Walker* v. *Conant* (Mich.), 31 N. W. Rep., 296; *Bank* v. *Insurance Co.*, 104 U. S., 54; 71 Pa., 213, 287; 91 *Ib.*, 465; Morse on Banking, §§ 208, 342 and 590.

There was a misapplication of the funds by the bank, after notice. The bank, being privy thereto, is liable to plaintiff. Morse on Banking, § 317; 35 Fed. Rep., 247; 18 Texas, 811; *Eyrich* v. *Bank*, 67 Miss., 60.

*Jayne & Watson*, for appellee.

The court did not err in giving a peremptory instruction for defendant. Lamon kept an account with the bank in his own name. Deposits were thus made, and checks were drawn upon his balances. While it may be true that he instructed

the bank to forward exchange to plaintiff, it is also true that the money which he expected to be forwarded was deposited to his own credit, and he never gave the bank a check for any of its funds at the time he claims to have requested the remittance made to plaintiff. The only time when he intimates that he offered a check for this purpose, was after he had been permitted to overdraw, and after the bank had informed him that his checks would not be honored until he had made good his account. It will be noted that he claims to have collected the money by the early part of March, and he afterwards made other large deposits and drew large sums, never suggesting to the bank that he had failed to remit plaintiff, or offering a check for any amount to be remitted.

The case does not come within the rule laid down in *Bank* v. *Insurance Co.*, 104 U. S., 54, but is controlled by the case of *Eyrich* v. *Bank*, 67 Miss., 60, and especially that part of the opinion beginning on page 72.

WOODS, J., delivered the opinion of the court.

It appears from the evidence of the witness, Lamon, that, as the agent of the Armour Packing Company, he received a certain car-load of meat, which he was authorized to sell for and on account of his principal, and that, as such agent, he did sell $1,047.67 worth of said meat, and deposited said sum with the First National Bank of Greenville in his own name and to his own credit. It likewise appears, from the evidence of this witness, that, at the time the money was so deposited, he notified the bank that it was the money of the Armour Company, and that he directed the bank to remit the same to said company. There is, too, evidence tending to show that the bank had notice that the money was the proceeds of the said car-load of meat, and that, at the time of making the deposit, the proper bank official indicated and distinguished this from other money deposited by Lamon by writing the word "meat" opposite the entry in the pass-book of Lamon. In like manner, it is shown that the bank cashier and Lamon

had conversations about this particular car load of meat, and that they "regretted that it came in the fix it was;" and, finally, the direct testimony of Lamon, as well as Lamon's letters introduced in evidence by the witness, Kennon, shows, or tends to show, that the bank applied, or participated in the application of this money, so deposited, to pay Lamon's over-drafts with the bank, after notice of the real ownership of the money.

In this connection it is only necessary to observe that the bank officials deny, positively, any notice that the Armour Company was the real owner of the deposit, and that any direction was given by Lamon to remit the same to his principal, as testified to by him, until after the deposit had all been paid out on Lamon's checks.

The action of the trial court in peremptorily instructing the jury to find for the bank, and in refusing all the instructions prayed by the Armour Company, must have been based upon the general rule that the relationship between a bank and its depositor is that merely of debtor and creditor, and that, so long as there remains a balance in favor of the depositor, it constitutes a debt due the depositor which the bank is bound to liquidate by honoring the checks of the depositor to the extent of the deposit. This rule, in its general aspects, is correct, but its application to the facts of this case on the trial below was too literal. The limitations and qualifications of the general rule would seem not to have been sufficiently regarded.

Ordinarily, the bank is required to pay the checks drawn against a deposit by the person making it, until the fund is exhausted; but, if the bank has notice that the money deposited really belongs to another person, then the payment of the checks of the depositor, after such notice, will be at the peril of the bank. "A merchant sends his clerk to deposit money in bank, and, instead of depositing it in the name of his employer, he deposits it in his own name. Would a payment to the clerk, after having notice of the fraud, protect

the bank from the suit of the principal? . . . It is true, that, until the bank officials have notice, they may consider the agent as the owner of the funds; but when they are informed that the money belongs to the principal, they are, as they ought to be, placed in a different position." 8 Watts & Serg., 18.

But in considering and determining this case (regarded in the light of Lamon's evidence), we do not rest our opinion upon the foregoing ground exclusively or chiefly. Rather, we put it upon the proposition that, if there was a misappropriation of the trust-fund by the bank, or, if there was a beneficial participation in the misappropriation of the trust-fund on the part of the bank, after knowledge of the fact that Lamon held the money in a fiduciary character, and that the Armour Company was the real owner of it, then the bank was liable for the fund. If Lamon's evidence is to be believed, then there was participation by the bank, in its own interest, in the misappropriation of the money; for by Lamon's direct testimony, as well as by his letters introduced in evidence, it is shown that this money, so deposited under the circumstances narrated by him, was applied by the bank in payment of his overdrafts. The soundness of this view was recognized and asserted by this court in the very carefully considered case of *Eyrich* v. *Capital State Bank*, 67 Miss., 60.

According to Lamon's testimony, and from his letters used on the trial, there was evidence showing, or tending to show, that notice was given the bank that the $1,047.67 deposited by Lamon was the proceeds of the particular car-load of meat sold by him for and on account of his principal, and that the money really belonged to the Armour Company; and, in addition to this, that when the deposit was made, and notice given, directions were given the bank to remit the same to the real owner. Equally clear is the evidence we are looking at to the effect, that, after such notice and direction, the money so deposited was appropriated to the settlement

of Lamon's account with the bank, or, specifically, in payment of his overdrafts in the bank.

There was another principle contended for by appellant's counsel on the trial below, and pressed upon us here.   Stated in its simplest form, it is this:  When instructions accompanying a deposit are given the bank by the depositor, they must be obeyed.   The general proposition is elementary, and need only be stated.   True it is, however, ordinarily, that the bank would not be required to obey instructions verbally given as to the disposition of a deposit.   But if the bank accepts the verbal direction, and, either expressly or by fair implication, consents to follow such direction, we do not see why it should be thereafter heard to say that it was only required to follow written directions given by the depositor.   According to Lamon's evidence, when he deposited this money in bank, he not only disclosed to the bank who the real owner was, and had an appropriate notation to that effect made by the bank officer in his pass-book, but he expressly directed, verbally, the transmission of the money to his principal without any question on the bank's part of the sufficiency of the manner of giving the direction, and without any intimation of its purpose not to obey the instruction.

We intimate no opinion, of course, as to the value of Lamon's testimony; but, whatever its worth, it seems clear that it presented issues of fact which should have been submitted to the jury, under proper instructions from the court, in view of the law applicable as we have annotced it.

*Reversed and remanded for a new trial.*