BOLIVAR COUNTY *v.* BANK OF CLEVELAND.

(In Banc. May 28, 1934.)

[155 So. 176. No. 30897.]

**J. C. Roberts** and **Sillers & Roberts,** all of Rosedale, for appellant.

Shands, Elmore & Causey, of Cleveland, for appellee.

Argued orally by **Walter Sillers**, for appellant, and by **H. H. Elmore**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On or about January 1, 1930, one Harrington rented from appellant county four hundred acres in a sixteenth section in appellant county for that year for an agreed rental of four thousand dollars. Thereafter the tenant gave a deed of trust to appellee bank on all crops to be raised during that year on said sixteenth section lands. The tenant was allowed to sell the cotton produced on the lands and to receive the proceeds as if there were no liens upon the crop. He did so and deposited the proceeds to his own credit in appellee bank. There was a short crop and the proceeds were insufficient to pay the amount due the landlord and the advances due to the bank under the deed of trust. The tenant paid the landlord less than one thousand dollars on the rent account, leaving due to the county as landlord more than three thousand dollars. Nevertheless, the tenant, in November, 1930, paid to the bank, by check drawn on his account in said bank, where the proceeds of the crop were deposited, the sum of three thousand dollars. The county demanded of the bank that said sum be paid over by the bank to the county as holder of the superior lien; the bank refused; suit was filed by the county to enforce its demand; and its bill was dismissed by the trial court.

It is contended in support of the decree that the county had waived its lien, but we are of the opinion that the rules on that subject which are applied as against private owners are not available as against a county, which can act only as allowed by statute. There was no statute on this subject at that time. Such a statute was later passed, chapter 159, Laws 1932; but, whether that act is or is not valid, it is of no consequence here, because it had no retroactive effect.

In the next place, it is contended that the bank had no notice that the proceeds of the crop paid over to the bank as aforesaid were in fact proceeds of crops raised on said sixteenth section lands. We have carefully ex-

amined the evidence on that issue and, without elaborating upon the details thereof, we are of the opinion that the evidence, reasonably interpreted, and viewing it as a whole, is manifestly sufficient to show knowledge on the part of the bank, or, at least, is sufficient to carry knowledge to the bank of such facts as would put it upon inquiry, which inquiry, if reasonably and prudently followed, would have led to knowledge that the proceeds aforesaid were of cotton raised on said sixteenth section lands.

Thus, we are brought to the simple question whether the proceeds of the cotton sold by the tenant, and which proceeds were deposited by him to his own account and were later paid to the bank on the tenant's debt to the bank, were trust funds impressed with a trust in favor of the superior lienholder, the county. This question we must answer in the affirmative under the settled rule that where a mortgagor or lienor sells the mortgaged property or the property incumbered by any fixed lien and receives the proceeds thereof, the proceeds stand in the place of the thing sold, and the lien attaches to the proceeds as trust funds, Cole-McIntyre-Norfleet Co. v. Du Bard, 135 Miss. 20, 32, 99 So. 474; and the answer upon the whole case is that appellee bank, having notice of the character of these funds as trust funds, could not hold the same upon appropriation to its deed of trust as against the superior lien of the county and thereby convert the bank's inferior lien into a superior encumbrance, doing thus indirectly what it could not do directly.

Reversed, and decree here for appellant.

**Ethridge, J.**, delivered a dissenting opinion.

I am unable to agree with the conclusion reached in this case by the majority. The lessee of the sixteenth section lands, Harrington, had leased and worked said lands for a number of years prior to the year involved in this suit, and had, throughout that period, sold the cot-

ton grown by him to various cotton buyers, taking checks therefor, placing said checks in the bank, and paying the county by check drawn from the money so received. Usually, the cotton was placed in a warehouse and warehouse receipts were issued under the Uniform Warehouse Receipts Law (Code 1930, section 3481 et seq.) and turned over to him, and the cotton was sold to the various buyers by delivering to them these warehouse receipts thus issued. In the year involved here, and in previous years, Harrington had borrowed money from the bank to finance his farming operations, giving a deed of trust upon the crops to be grown, the leased lands, and other property.

The bank knew Harrington was working sixteenth section lands, but did not have knowledge of his other business, or, at least, that issue was in dispute and was decided in the bank's favor by the chancery court.

The right of a county is measured by the statute which gives the county the same right as individuals under like circumstances. Code 1930, sections 6002 to 6004. The county is not given in special terms a lien upon the products grown upon sixteenth section lands, but its rights thereto are given by construction and by the foregoing sections.

Some of the cotton grown for the year involved was sold outside this state, and there was no lien upon the cotton after it passed out of this state. Ball v. Sledge, 82 Miss. 749, 35 So. 447, 100 Am. St. Rep. 654; Millsaps v. Tate, 75 Miss. 150, 21 So. 663. In Ball v. Sledge, supra, it was said that: "The lien of the landlord does not follow agricultural products when carried out of this state, and the purchaser who acquires them out of this state is not liable to the landlord, although he had notice of the lien while they were in this state." It was further said that: "A creditor who receives in this state in payment of his debt cotton upon which a third person has a landlord's lien may enforce repayment from the debtor, if the property or its proceeds be taken from him by the enforce-

ment of the lien, although he had executed a receipt in full upon receiving the cotton. He cannot do so, however, if he received the cotton out of the state.''

The county's right being the same as an individual's right is, of course, subject to the same conditions as an individual's would be, and a landlord who habitually permits a lessee or share-crop tenant to sell his products cannot enforce a landlord's lien against or recover the value of the products from a good faith purchaser. Phillips v. Thomas, 128 Miss. 729, 91 So. 420; Seavey & Sons v. Godbold, 99 Miss. 113, 54 So. 838; Judd v. Delta Grocery & Cotton Co., 133 Miss. 866, 98 So. 243.

A considerable portion of the cotton involved in the case at bar was purchased by local dealers, or dealers having a local buyer in the county, and the landlord has a remedy against such purchasers. The county should be required to prosecute this remedy in this case.

I think the facts in this case are insufficient to make the bank liable on any theory of knowledge. There is nothing in the record, other than the memorandum upon the receipt, to show that the checks, which were negotiable instruments, either payable to bearer or order and duly indorsed, were for the crops grown on the said leased premises. In Eyrich v. Capital State Bank, 67 Miss. 60, 6 So. 615, it was held by this court that: ''Ordinarily a bank has no concern with the application of money paid out by it upon properly signed checks, nor is it bound to take notice of private memoranda upon checks presumably made for the information of the drawer.''

The checks which were deposited in the bank in the case at bar were deposited at various times, and on deposit became the funds of the bank, and the bank became a creditor of the depositor. It would certainly be unreasonable to hold that the notice of a mere memorandum upon a check at the time of its deposit under such circumstances would charge the bank with notice thereafter when the depositor undertook to check out the money.

In Eyrich v. Capital State Bank, supra, it was further said that: "Where a check properly signed in the firm-name is presented to a bank having on deposit funds of the partnership, although there are circumstances known to the bank or some of its officers which would suggest doubts as to the destination of the fund, and an investigation would disclose to what purpose the funds were being applied, the bank is not bound to refuse payment and suspend its ordinary course of business to satisfy itself as to the proper application of the fund."

In Deer Island Fish & Oyster Co. v. First National Bank of Biloxi, 166 Miss. 162, 146 So. 116, it was held that: "Generally, deposit of money or equivalent creates debtor-creditor relation, and title to funds vests in bank unless deposit is special."

In the case at bar all the checks being negotiable instruments passed through the bank, and the bank became debtor to the depositor for the amount of the checks, and the checks were collected in due course by the bank, including the check for the thirty-one bales of cotton sold outside this state.

As I understand it, it is not contended that the deposits, when made, were trust funds which required the bank to hold them until paid out in the proper way. In other words, when the funds were deposited the title passed to the bank unincumbered by any trust, and the bank thus became debtor to the depositor. This is insufficient to make the bank a trustee when it thereafter accepted a check in payment of its debt due by the depositor.

There are various cases, some of which I think were decidedly stronger than the case at bar, in which our court has refused to impress a trust upon such funds. In Adler v. Interstate Trust & Banking Company, 166 Miss. 215, 146 So. 107, 87 A. L. R. 347, the bank received for deposit, from one of its affiliated agents, checks which were placed to the credit of the depositor. The bank was used as a depository by the trustee in a deed of trust of

the funds sent it to pay the outstanding notes. It was contended that the bank in that case received trust funds knowing they were sent to the Mortgage & Security Company (whose officers were the same as those of the bank), to pay the notes of which that company was trustee, and had sufficient notice that the funds were trust funds, and yet this court refused to impress a trust upon such funds.

In Love v. Little, 167 Miss. 105, 148 So. 646, this court refused to impress a trust upon funds to be held by a bank until the three payees should agree upon the disbursement thereof. Although the bank in that case was a trustee to hold such funds until the three payees should direct their application, the funds were placed to the credit of the depositors on the books of the bank, and the funds were mingled with the funds of the bank, and it was there held that a deposit is presumed general unless made special or specific; and this is true, even though the money deposited may be trust funds put with the bank on condition that it may pay a certain sum to cestui during life, in absence of evidence showing it is the bank's duty, by agreement, express or clearly implied, to keep funds and their investment separate. This case is a much stronger case on the facts than the case at bar, and I thought therein that a trust should be impressed and the bank held to be a trustee, but the majority of the court did not think so. How the doctrine in that case can be reconciled with the holding in this case I cannot understand.

The case at bar is brought in the chancery court, and the complainant is in no position to invoke the aid of equity. The complainant cannot be said to have come into court with clean hands, nor could it be said to have acted with diligence, nor according to equitable conduct.

When a county comes into court, unless there are statutory provisions to the contrary, it comes subject to the same provisions and conditions under which a private person comes. Humphreys County v. Cashin, 128 Miss. 236, 90 So. 888; 59 C. J. 474, and notes.

The court here should have refused aid to the county, and did so, and we should likewise have refused its aid because it has put itself in a condition where it can gain relief only by the hurt of other persons who were induced to act with reference to the habit of the county in trans- acting business, such as leasing its lands and collecting the rents therefor.

I think, therefore, that the judgment should be affirmed.