LADNER *et al. v.* LADNER *et al.*

[90 South. 593, No. 21976.]

1. TRUSTS. *Parol trust held created in fund deposited in savings bank.*
   Where one makes a time deposit in a savings bank to the order of
   himself and another, and at the time of making the deposit informs
   the cashier of the ·bank that .it is his desire to place this money in
   the bank in the name of the other party, but so that he, the depositor,
   can draw the interest while he lives, and that he wishes the money
   to go to the other person at his death, the facts and circumstances
   attending this deposit show that it was the intention of the depositor
   and that as a matter of fact he did thereby create a perfected parol
   trust in this fund; the beneficiary thereof being the other person
   whose name appears upon the deposit slip.

2. TRUSTS. *Declaration of depositor in savings bank held to pass
   principal to beneficiary in praesenti to be enjoyed in futuro.*
   In such case by this declaration the equitable title to the principal
   passed to the *cestui que trust,* vesting *in praesenti,* to be enjoyed
   *in futuro,* upon the death of the depositor.

APPEAL from chancery court of Harrison count.

HON. V. A. GRIFFITH, Chancellor.

Suit by M. L. Ladner and others against Arthemise Ladner, as administratrix of Alfred Ladner, deceased, and others. Decree for plaintiffs, and defendants appeals. Affirmed.

*Mize & Mize* and *C. B. Adam,* for appellants.

*Gex & Waller,* for appellees.

SYKES, P. J., delivered the opinion of the court.

The appellees (five in number) by this proceeding in chancery seek to establish their ownership of certain funds deposited in bank by their father, now deceased. The defendant Mrs. Arthemise Ladner claims the funds as adminiitratrix of the estate of her husband. In its answer the bank offers to deliver the certificates of deposit into court, or to any one who the court may determine is legally entitled to them. The theory of the bill is that either by the deposits a gift *causa mortis* was made by the deceased to the complainants, or that his statements, acts, and intention, when he made the deposits, constituted a parol trust, of which these complainants are the beneficiaries therein.

The facts are simple and uncontradicted, and are as follows: Alfred Ladner, father of appellees and husband of Mrs. Arthemise Ladner, died intestate, leaving the complainants and his widow as his heirs at law. He had been twice married, and the complainants (appellees) were the issue of his first marriage. About a year and a half before his death he had on deposit in two banks about fourteen thousand dollars. He had already given his wife a home, and, being over eighty years old, he conceived the idea of depositing this money in the two banks with whom he did business, so that during his lifetime he could enjoy the interest from the money and his children each get the deposit of two thousand dollars at his death. Accordingly,

five separate deposits were made in the defendant bank, each of two thousand dollars, and two deposits of similar character in another bank. These certificates of deposit are all alike, and except for the name of the child all read like the following:

"Pass Christian, Miss., May 20, 1920.

"No. 1161.

"This certifies that Alfred Ladner has deposited with the Hancock County Bank 85-367 at Pass Christian, Miss., $2,000, two thousand dollars, payable to the order of Alfred Ladner & Alice Ladner Moran or either of them or the survivor with interest at the rate of four per cent. per annum in six months from date on the return of this certificate properly indorsed.

"No interest after maturity.

"Not subject to check.

"E. A. LANG, Asst. Cashier."

These deposits had been renewed three times prior to the death of Alfred Ladner. At each renewal he drew out the accrued interest. Prior to making these deposits, according to the testimony of his widow, the deceased told her that he had given her the place (meaning residence) and was going to give the money to the children. She did not go with him to the bank. After this conversation with his wife the deceased went to the bank and consulted Mr. Cazeneuve (its vice president and cashier), his warm personal friend of many years' standing. Mr. Cazeneuve testified that Mr. Ladner told him:

"That he wanted to place this money in the name of five of his children, but that he was to draw the interest while he lived; that he needed that to help him live. So I told him I could fix him up, and he took these certificates and gaves me the names of the boys and girls, and I issued certificates in their names, each for two thousand dollars, payable in six months, and he had them renewed every six months. You see the interest was due at the end of every six months, and if he should die the money was to go to his children. Mr. Ladner told me he had provided

for his wife by buying a piece of property at Pass Christian; the house had burned on this property, but he rebuilt it so she could have an income; but the money he put in the bank he wanted his children to have that."

These certificates Mr. Ladner left at the bank for safe-keeping. Mr. Cazeneuve further testified that the deceased had the right to draw out the money whenever he wished, but that the children could not do so. He further testified as follow: That Mr. Ladner told him at the time he made the deposit that when he died he wanted the children to have the money, but that as long as he lived he wanted to collect the interest on it, and that it was their understanding that he was to keep this money on deposit in the bank and draw on the interest as long as he lived. Every six months the interest was collected by Mr. Ladner and the deposits renewed, in accordance with the original understanding had between him and Mr. Cazeneuve.

This is the uncontradicted testimony material to the question involved. The learned chancellor held that the facts and circumstances attending the original deposit constituted a parol trust in favor of the children. From this decree Mrs. Ladner prosecutes this appeal.

We are indebted to counsel for their able and exhaustive briefs upon the question involved.

It is the contention of the appellant that Mr. Ladner ineffectually attempted to either make a gift *inter vivos* or testamentary of this money.

It is the contention of the appellees that it was the intent and purpose of Mr. Ladner to create a parol trust, which was perfected, and that this is shown by the facts and circumstances connected with these deposits. That such a trust may be created is not denied, but the difficulty in this case is rather the application of the law to the facts. The general rule is thus stated by Mr. Pomeroy:

"A perfect or completed trust is valid and enforceable though purely voluntary. A voluntary trust which is still executory, incomplete, imperfect, or promissory will neither be enforced or aided. In order to render the voluntary

trust valid and effectual, the party creating it, either by direct transfer or by declaration, must have done everything which, according to the nature of the property comprised in it, was necessary to be done in order to transfer the property and render the transaction binding upon him. A person holding property, real or personal, and intending to make a voluntary disposition thereof for the benefit of another, may do so in either one of three modes:

"(1)   He may make a simple conveyance or assignment of it directly to the donee, so as to vest in the latter whatever interest and title the donor has without the intervention of any trust.

"(2)   He may make a transfer of it to a third person upon trust declared in favor of the donee.

"(3)   He may retain the title and declare himself a trustee for the donee, and thus clothe the donee with the beneficial estate.

"In either of these modes, if the transaction is imperfect and executory, equity will not aid nor enforce it; and if the intention of the party is to adopt one of the methods, a court of equity will not resort to either of the other methods for the purpose of carrying it into effect. . . . If the donor adopts the second or third mode, he need not use any technical words or language in express terms creating or declaring a trust, but he must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare a trust in himself. It is not essential, however, that the donor should part with the possession in cases where he thus creates or declares a trust." 2 Pomeroy, Equity Jurisprudence, section 997.

It is also well established that a trust so created may be either revocable or irrevocable according to its terms, and that a revocable trust, not revoked by the creator or settlor, during his lifetime is enforceable.

The chancellor was warranted in finding as a fact in this case, from the uncontradicted testimony, that the deceased believed that he had amply provided for his wife, and that he wished to divide his money among his children, but

that he wanted to arrange it in such a way that he could draw the interest on this money during his lifetime. The explanation made by Mr. Cazeneuve constituted a perfect declaration of a trust. In such a case the legal title is withheld from the donee, and may be retained by the donor or transferred to a third person; but the equitable title vests in the *cestui que trust,* and passes beyond the control of the donor, unless the declaration of trust contains a power of revocation. In such a case it is not necessary that the certificate of deposit be made out to one as trustee. But the trust depends upon the intent and the apt declaration of the grantor or settlor. If the intention be to create a trust vesting the beneficial interest in a *cestui que trust,* it is valid, though it be by parol. On the other hand, there are numerous cases where, though a deposit slip is in the name of one as trustee, the facts and circumstances failed to establish a perfected trust. The creation of a trust is but the gift of the equitable interest. An unequivalent declaration as effectively passes an equitable title to the *cestui que trust* as delivery passes the legal title to the donee of a gift *inter vivos.* In this case at the time of the deposits the beneficial interest in these funds vested *in praesenti* in the children, to be enjoyed *in futuro,* namely, upon the death of the depositor. As is stated in the case of *Hiserodt* v. *Hamlett,* 74 Miss. 37, 20 So. 143:

"A completely constituted parol trust of personality is not ambulatory at all, as to the present vesting of interest —subject to revocation, or not so subject. It is vitalized by what is done then, at the time of its constitution by the donor, and is as effectual thenceforward, even when subject to revocation, until duly revoked, as any other disposition of property, and to be administered according to the legal character stamped upon it at the time of its creation. One may do what he will, within legal limits, with his own. He may declare a trust absolute, never thereafter having, in any wise, the right to interfere with it, or he may declare a trust revocable upon a named contingency."

A collation of all the authorities bearing upon this question may be found in the briefs of counsel. The chancellor was warranted in finding from all of the facts surrounding these deposits that it was the intention, and trusts were in fact created by Mr. Ladner in favor of his children, and that they were entitled to the funds so deposited.

The decree of the lower court is affirmed.

*Affirmed.*