WILLIAMS *et al. v.* BAILEY.

(In Banc. Jan. 27, 1936.)

[165 So. 439. No. 31977.]

C. E. Johnson, of Union, and Gilbert & Cameron, of Meridian, for appellants.

F. K. Ethridge, of Meridian, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Dr. T. W. Reagan had been twice married. There were three children by his first marriage, two of whom, John H. Reagan and Omera Reagan, are the trust beneficiaries hereinafter to be more particularly mentioned. He was divorced from the mother of these children in 1928, and thereafter married again. He was devotedly attached to the children, and remained on friendly terms with their mother. We quote from the finding of facts by the chancellor as follows: "Dr. Reagan had taken out a life insurance policy on his life payable in the event of his

death to his little daughter Omera Reagan but having the option to him at any time to surrender the policy and receive its cash surrender value. During his lifetime he exercised that option and cashed the policy in and received for its surrender the sum of three thousand dollars which he placed in the Merchants and Farmers Bank of Meridian to his own credit. That money was Dr. Reagan's money to do with as he pleased. Afterwards, a few days afterwards, he transferred that money to the Bank of Lake, near his old home at Conehatta in Newton county. When he did so he contemporaneously therewith caused the Bank of Lake to issue and deliver to him two time certificates of deposit, one being number 1441 for $2,200.00 payable to Dr. T. W. Reagan or Omera Reagan, due in twelve months, bearing four per cent interest; and another time certificate of deposit number 1442 for $800.00 payable to John H. Reagan due in twelve months bearing four per cent interest. These two time certificates of deposit were delivered to Dr. Reagan by the banker. Dr. Reagan took these two time certificates of deposit and on the same day he went to visit his former wife, Mrs. Maud Reagan, at her home where the testimony shows he was welcome and where he frequently visited. When he got there he handed these two certificates of deposit to his former wife, Mrs. Maud Reagan, with whom he was perfectly friendly and he said 'put them up and take care of them.' One witness, the wife of Howard Reagan, another son of Dr. Reagan, says that he said 'put them up and keep them until I call for them,' or 'unless I call for them.' They stayed in the possession and control of Mrs. Maud Reagan until after Dr. Reagan died, and indeed, until this law suit was ready to be tried, some two or three weeks ago.''

The two certificates of deposit mentioned by the chancellor were, respectively, in the following form:

"The Bank of Lake  No. 1441  $2,200.00

"Lake, Miss. December 27, 1933

"Dr. T. W. Reagan or Omera Reagan has deposited in this Bank Twenty two hundred Dollars payable to the order of Dr. T. W. Reagan or Omera Reagan in current funds on the return of this certificate properly endorsed.

"Interest at 4 per cent per annum if left 6-12 months

"W. P. McMullan, Cashier."

"The Bank of Lake  No. 1442  $800.00

"Lake, Miss. December 27, 1933

"Johnnie Reagan has deposited in this Bank Eight Hundred Dollars payable to the order of himself in current funds on the return of this certificate properly endorsed.

"Interest 4 per cent per annum if left 6-12 months.

"W. P. McMullan, Cashier."

The testimony further shows that Dr. Reagan had deeded certain lands to his first wife, and other lands to his second wife, and that he had either already taken care of his married son Howard Reagan, in the same manner or expected to do so.  The testimony is ample, by several witnesses, and is undisputed that he desired his oldest son, John H., to be educated as a physician, and this son, at the date of the certificates, above copied, being about to finish his literary course at a junior college, Dr. Reagan desired to assure to said son sufficient cash funds to enable him to take the first two years of a medical course. The testimony is ample, by several witnesses, and is undisputed that Dr. Reagan also desired the daughter, Omera, then only about ten years old, to have an education and to be assured of funds for that purpose. It was in pursuance of this fixed and often declared purpose, and as one of the acts which gave further evidence of it, that he transferred the funds from the bank in Meridian, where he was then living, to a bank in the neighborhood of the home of the two children who had continued to live with their mother, and the reason, too, that he took

the certificates on the same day and delivered them to their mother. Dr. Reagan was in ill health, although entirely capable in business. He died intestate soon thereafter, on March 20, 1934.

We may here quote from the testimony of Mr. McMullan, the bank cashier, and the only witness as to what actually happened at the bank the day the above certificates were issued. Mr. McMullan testified that on two previous occasions Dr. Reagan had mentioned the matter to him, on the first of which Dr. Reagan said "he had an endowment life insurance policy and he was going to collect the money and put it in our bank . . . for the purpose of educating his children, . . . John H. Reagan and Omera Reagan." On the second occasion "he said he had this policy maturing and he was going to collect it and bring it down and deposit it where it could be collected for them or by them for their education." On the day the deposits were made, Dr. Reagan delivered to the bank the three thousand dollars and Mr. McMullan testified further as to what happened that day: "He says I want this money placed where the children can collect it. . . . He says I want $2,200 placed in the bank payable to myself or Omera Reagan . . . and he wanted $800 placed to the account of John H. Reagan." The witness testified, in some detail, that the certificates were issued in the exact terms as directed by Dr. Reagan. The cashier, Mr. McMullan, was unable to recall whether anything was ever said between him and Dr. Reagan as to the collection of the interest on the certificates or as to who was to collect or receive the interest.

The case has been presented and argued here as if the only question of law to be decided is whether the facts disclose a completed gift inter vivos; and, because that is the only legal question discussed in the opinion of the chancellor, we feel entirely safe in assuming that the trust feature and the case which we shall now cite and apply

were never mentioned to the chancellor. We may concede for the purposes of this case, but without deciding, that the facts do not establish a completed gift inter vivos in behalf of either of said children; and we might also refer to the general rule in regard to the confinement of the parties to the theory upon which they have presented their cause in the trial court and here; but in so doing we must declare that, whatever the operation of that rule may be as to adult litigants, it can have no effect to stay the hands of the court when one of the principal parties litigant is a minor of tender years, and when, in the attempt to make out the proof in her behalf upon one theory, sufficient facts consistent with that theory have been developed to disclose that the minor is entitled to recover upon a different, but consistent, theory.

We are of the opinion that the facts and circumstances are such as to establish in the deposits aforesaid a parol trust respectively in behalf of the two children named in the certificates, and that no substantial differentiation can be made between the case now before us and that presented in Ladner v. Ladner, 128 Miss. 75, 90 So. 593, unless it may be said the present case is even stronger on the material facts in behalf of the trust beneficiaries than in the Ladner case. It is not necessary to repeat the discussion contained in the opinion in the Ladner case further than to say that in material respects it fits this case precisely, and we content ourselves with adding only that the equitable title is now vested in the respective beneficiaries named in the certificates and is now enforceable in equity, with as full effect as if the legal title had passed by a completed gift inter vivos.

Reversed and decree here for appellants.