JACKSON v. JEFFERSON et al.

(Division B. Jan. 14, 1935.)

[158 So. 486. No. 31507.]

W. D. Womack and L. R. Wadlington, both of Belzoni, for appellant.

776

H. F. Jones, of Belzoni, for appellees.

778

Argued orally by **W. D. Womack**, for appellant, and by **H. F. Jones**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellees, Doss Jefferson, Ellie Jefferson, Horse Gowdy, and Sam Willis, four negroes, filed their separate

bills in the chancery court of Humphreys county against appellant, and her farm tenant, W. R. Jenkins, appellees being his share croppers, to recover their shares of crops produced by them during the year 1933, the proceeds of which had been sold by Jenkins, and turned over to appellant. By agreement the four cases were consolidated and tried as one. The trial was had on bills, answers, and proofs, resulting in decrees as follows: For appellee Doss Jefferson, two hundred sixty dollars and three cents; for Horse Gowdy, three hundred eighty-nine dollars and three cents; for Ellie Jefferson, one hundred seventy-eight dollars and sixty-eight cents; and for Sam Willis, two hundred and ninety-nine dollars and seventy-eight cents; with six per cent. interest on each of the amounts from January 1, 1934. From those decrees appellant prosecutes this appeal.

There is little, if any, conflict in the material evidence. Mrs. Jackson owned a farm in Humphreys county. Her husband, Dr. J. S. Jackson, had full control of it for her, and had had for twenty years or more. For about twenty years he had rented it annually to Jenkins. He rented it to Jenkins for the year 1933, at a standing rental of one thousand dollars. In addition he advanced Jenkins money with which to supply and farm the place during the year. Jenkins share-cropped to these four negroes part of the farm for that year; they made the usual share-crop contract, which was that the landlord would furnish the land, teams, plow tools, and "furnish" to make the crops; the tenants to furnish the labor therefor; the proceeds to be shared, half and half, the tenants first paying the "furnish" out of their half of the proceeds.

At the beginning of the year 1933, Jenkins was indebted to Mrs. Jackson for a past-due indebtedness, probably incurred over a period of years, in the sum of two thousand three hundred thirty-three dollars and sixty-seven cents. On the 18th day of February, 1933, he

executed his note to Mrs. Jackson for the amount, and a deed of trust on all his crops and other property, to secure the same. At the time of the execution of the note and deed of trust, Jenkins had contracted with these share croppers—however, that fact is immaterial. Mrs. Jackson had no lien by operation of law on Jenkins' crops for the year 1933, to pay that indebtedness.

When the cotton crop was gathered and ready for market, Jenkins took charge of all the cotton produced by these share croppers, sold it, and turned the proceeds over to his landlord, Mrs. Jackson. This had been the custom for years. These proceeds were sufficient to pay the one thousand dollars Jenkins owed Mrs. Jackson for the rental of the place, and Mrs. Jackson's "furnish" to Jenkins, to enable him to farm the place; and, in addition, Jenkins' "furnish" to these share croppers to enable them to make and gather their crops; and there was left the amounts decreed to each of them by the court, as above set out. Instead of paying these amounts over to Jenkins, to be paid by him to the share croppers, as the evidence showed to have been the custom, Mrs. Jackson placed them as a credit on the two thousand three hundred thirty-three dollars and sixty-seven cent note due her by Jenkins. The evidence was ample to show that Mrs. Jackson at the time had notice, either actual or constructive, that these amounts represented appellees' interest in crops produced by them; that they were rightfully entitled thereto; and that Jenkins had no other means with which to pay them.

The evidence showed, without dispute, that appellees consented for Jenkins to sell the crops; but that the understanding was, if not expressed, at least tacit, that after taking out his "furnish" to them, they were to receive from him what was left of their half of the crops.

The basis of appellees' cases is that Jenkins, in selling, and receiving the proceeds of, the crops, occupied a trust relation to them, so far as their interest was concerned;

that as such trustee it was his duty to receive and pay over to them such interests; that Mrs. Jackson, having actual or constructive notice of such trust, received the proceeds impressed with it, and therefore she also held them as trustee, for their benefit. The court evidently took that view, and rendered a decree against Jenkins and Mrs. Jackson for the amounts. Mrs. Jackson alone appealed, Jenkins being insolvent.

Appellant contends that the principles laid down in Williams v. Delta Grocery & Cotton Co., 159 Miss. 575, 132 So. 732, are controlling in this case. In the first place, that was a suit at law, and not in equity; in the next place, the evidence showed that Williams, the plantation manager, authorized the owner of the plantation to sell the crops on which he had a lien for his services, he to look to the plantation owner alone for the amount due him for such services. There was no effort in that action at law to impress the funds in the hands of the Delta Grocery & Cotton Company with a trust in favor of Williams. However, we do not mean to intimate that if there had been, the result would have been different, under the particular facts of that case. There is this difference between the present case and that: The evidence in this case showed that Jenkins was authorized to sell the crops free from the croppers' lien, and to turn the checks of the purchasers over to Mrs. Jackson for collection; and when collected, Mrs. Jackson was to turn back to Jenkins the amounts due the croppers, for the purpose of being turned over to them—that this was the practice and agreement which had theretofore been carried out. 'Under section 2238, Code 1930, appellees had a lien on the crops produced by them for the payment of their shares thereof, paramount to all liens and incumbrances or rights of any kind created by, or against, Jenkins, except the lien of Mrs. Jackson for her rent and supplies furnished Jenkins. It is true, this lien was waived as to the purchasers of the crops, as

held in the Delta Grocery & Cotton Company Case. But, under the facts here, was it waived·as to the proceeds thereof in the hands of Jenkins and Mrs. Jackson? We think not. Mrs. Jackson, in crediting these amounts on the old indebtedness due her by Jenkins, parted with no present consideration; and, as above stated, she knew that Jenkins held them as trust funds. If a trustee or other fiduciary, in violation of his duty, uses money to pay an antecedent debt of his own to a creditor who has notice of such breach of trust, or that the money is subject to the trust, the beneficiary may impress a trust on money in the hands of the creditor. It is a well-settled doctrine of equity that a constructive trust arises where one party has obtained money which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another entitled thereto; as, for example, money acquired through a breach of trust or violation of a fiduciary trust. Pomeroy's Equity Jurisprudence, vol. 3, secs. 1047, 1048; Bolivar County v. Bank of Cleveland (Miss.), 155 So. 176; Newman v. Tillman, 71 Miss. 26, 13 So. 934.

Mrs. Jackson knew these were trust funds; she knew that appellees looked to them alone for their shares in the crops; that they constituted the only source from which they could receive their shares. She knew that when Jenkins consented, if he did consent, for these funds to be applied to his indebtedness to her, he thereby breached his trust, and that she was participating in such breach, and a party thereto. Both the Newman and the Bolivar county cases are in point, especially the latter. In the latter case the tenant was allowed by the landlord to sell the crops. He did so; and with the proceeds paid the bank a debt he owed it; the bank was affected with notice that the rent had not been paid; the court held that the landlord's lien attached to the proceeds of the sale in the hands of the bank.

Affirmed.