**SURGI et al. v. FIRST NAT. BANK & TRUST CO. OF VICKSBURG et al.**

No. 9934.

Circuit Court of Appeals, Fifth Circuit.

Jan. 30, 1942.

Rehearing Denied March 10, 1942.

Landman Teller and J. D. Thames, both of Vicksburg, Miss., for appellants.

Robert L. Dent and E. L. Brunini, both of Vicksburg, Miss., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants, plaintiffs below, brought this suit against the Merchants National Bank & Trust Company and the First National Bank & Trust Company, to recover $20,000 with interest from March, 1932, on account of monies and other properties of Mrs. Ophelia Rose, which had come into the hands of defendants impressed with a testamentary trust in plaintiffs' favor.

The claim was that Mrs. Adler, plaintiffs' great grandmother, had, by her will, made her daughter, Ophelia Rose, sole re-

siduary legatee of her estate, subject however to and charged with a legacy to her as trustee for each plaintiff of $10,000; that instead of segregating from the balance of her property and estate, and setting apart to plaintiffs this $20,000 so devised, their trustee commingled it with the balance of her property and thereby kept the whole property charged with the trust; that in 1933 she made an assignment to the defendant banks of all her properties and the said banks with notice and knowledge, that their trustee had not satisfied or made just and adequate provision for the trust, and that therefore all of her properties were charged with a lien in their favor, took the properties charged therewith and were and became responsible to plaintiffs to account to them for the value thereof; that said banks had administered upon and disposed of the properties so assigned to them by making, among other payments, large payments to themselves as creditors; and that the banks either hold the assets transferred to them in trust for plaintiffs, or if they cannot be found, are obligated to plaintiffs for the value thereof to the extent of $20,000 with interest from May, 1932, the last date on which their trustee paid them interest on account of the trust.

There was an admission that 668 shares of stock, which had been set apart to them by their trustee at the time of the transfer to the banks had been sold, and an offer, if required, to credit the sums received therefor upon the amounts due them by the banks.

The defense was that the banks were innocent purchasers for value without knowledge or notice of the lien or charge of complainants, that they had accepted and administered the trust for Mrs. Rose fairly and to the best interests of all concerned and that they are not therefore, liable to the plaintiffs for any sum. Mrs. Ophelia Rose, Lester Rose and John Brunini, were brought in by third party complaint on allegations that they had assets which were primarily subject to the claims of complainants. Mrs. Rose made answer that she had no possessions on hand of any value, and Brunini and Lester Rose answered that they had bought the properties they held at a judgment sale without notice or knowledge of plaintiffs' lien or claim thereon, if any. After a full hearing before the judge without a jury, there was a judgment for all defendants except Mrs. Rose. In support of its judgment the court filed voluminous findings of fact and conclusions of law which in effect came down to this: that Mrs. Rose was liable for a breach of trust, that "all the property that was transferred to the banks by Mrs. Rose as trustee was Mrs. Rose's property but was impressed with a secret lien in favor of the plaintiffs"; but that the banks and Lester Rose and Brunini were innocent purchasers without knowledge or notice of the breach of trust. No point was made on the original submission and there was no finding that plaintiffs had not traced trust property into the hands of defendants. But on a motion to change, and make added, findings, this point was vigorously pressed, and the court adhering to his finding that Brunini and the banks were innocent purchasers and withdrawing that, that Lester Rose was, declared that his first announced conclusion of law "that the banks took all of the property of Mrs. Rose impressed with a lien", was erroneous. In lieu of that conclusion he announced the conclusion that, because Mrs. Rose had failed to set up a trust for the children until at the time of the transfer to the banks when she set aside the 668 shares of bank stock, plaintiffs could not claim that their trust property was commingled with the property of Mrs. Rose, and that any of her property in the hands of the defendants, was charged with a lien for the satisfaction of their trust.

He further concluded that if a lien was impressed on any of the property, it was not shown to have been impressed on the bank stock purchased by Lester Rose because that stock was not shown either to have been Mrs. Adler's property, or within the meaning of the law, to have been confused or commingled with it.

Appellants here insisting that these findings and conclusions may not stand urge upon us, that because their trustee failed to segregate and identify particular property of the Adler Estate as property of the trust, the whole property of that Estate, including that with which it was commingled, and that into which it went, remained charged in the hands of the trustee, and all those to whom she delivered it with notice or knowledge of her breach, with a lien for its satisfaction; that when in 1933 as a part of the transfer to the banks an attempt was made in breach of the trust to set aside in satisfaction of it, property wholly inadequate in value, and to clear the rest of the property from its obligation, the banks not only knew or had notice of it, but were parties to

this wrongful dealing with trust property and therefore were not and could not be innocent purchasers; that since the undisputed evidence shows that property so charged, largely in excess of the value of plaintiffs' claims, was transferred to the banks and as creditors of Mrs. Rose, they had paid themselves, out of it, far more than the amounts due plaintiff, they are liable to plaintiffs for the full amount sued for; and that Brunini and Rose being judgment creditors who purchased at their own sale could not take any better title than Mrs. Rose, their judgment debtor, and to the extent that they took property charged with the trust, are liable for its value.

Appellees invoking Rule 56 that findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses, insist that these contentions are foreclosed by the adverse findings of the district judge who heard the witnesses orally and had opportunity to and did judge of their credibility.

Giving the utmost effect to the invoked rule we cannot read the evidence,[1] indeed the primary fact findings themselves,[2]

---

[1] Mrs. Rose testified that she turned her box, with all its contents over to Mr. Williamson, president of the First National Bank, that Mr. Hickman, then a vice-president, made up her list of assets, that the bank was told that she had set aside the stock, that "she didn't type-write and didn't make any of the type-written statements and that even if she could do it, she would have left matters of that kind to other people." She also testified: "I did everything open and aboveboard. I did not take that stock myself. It was a sacred obligation I had. I spoke to Mr. Hickman. He knew it and I suppose he told it. I told Mr. Williamson. I didn't want to put anything over so I was taking care of that." In answer to questions about the listing she testified:

"Q. Do you happen to recall who you depended upon to do that listing for you? Do you happen to recall whether the officers had access to the safety box? A. I delivered all of my possessions to Mr. Williamson, one of the bankers, I handed over everything to him. I withheld nothing.

"Q. Now who told you the value of this stock at the time you set it aside? Of whom did you make that inquiry? A. I refer you to my lawyer. I think he can answer that in full.

"Brunini: You can go ahead and talk. A. Shall I tell it?

"Brunini: Yes. A. Some of them down at the bank, somebody I can't call his name right now. Mr. Hickman got the value of my possessions before we went into liquidation for the purpose of making a detailed list of my assets to hand to the bank.

"Q. Who prepared the statement that you did turn over to the bank, do you recall? A. I would not recall that." And she testified too that she could not recall who prepared the statement prepared and signed on the same day which showed an ownership in her of 1,768 shares of First National Bank stock and listed under Liabilities: "Liability to set up a trust fund under Mrs. Adler's will $20,000."

Again she testified: "Q. Didn't the bank ask you why you had set this aside? A. The bank was told."

Williamson testified of the agreement: "We were represented by Brunini and Hirsch, and the Merchants Bank was represented by Dent. In these conferences, and I am of the opinion that both of those ladies conferred with that same firm of lawyers in their own interest." Williamson further testified: "That on February 9, 1933, he ascertained that this 668 shares of stock which Mrs. Rose had, told him belonged to her children was cut out of the assets. I stated Mrs. Rose withheld that stock stating that it was set aside for other parties, it didn't belong to her, I think she said for the children."

"Q. She was trustee for the children? A. I don't know whether she went into that trusteeship or not.

"Q. Did you ask her how it happened to be in her own name instead of the grandchildren? A. No, sir.

"Q. You didn't follow the inquiry at all? A. No, sir.

"Q. Do you know and did you at that time know how much the stock was supposed to represent? A. No, sir. I didn't make any inquiry." "There was no market at all for securities at that time. There was a depressed market for everything."

Hickman testified that he went over the values of everything with Mrs. Rose, gave her the value that she put on the stock and knew from her that 668 of the 1,768 shares standing in her name, belonged to the children.

[2] These are: "Mr. Hirsch of the firm of Brunini and Hirsch represented both the First National Bank and Mrs. Rose, and handled to a large extent the details leading up to the contract. Mr. Dent was attorney for Mrs. Fichel, had represent-

without coming to the conclusion that the mixed finding of law and fact of the first opinion that the banks had no notice or knowledge of Mrs. Rose's breach of trust, is as clearly erroneous as is the conclusion of law of the second opinion, that her failure to carve the trust property out from the balance of the Adler Estate freed the estate from the charge imposed by the will.

█ It is undisputed and the court found that the setting aside of the 668 shares of stock was a breach of trust because the stock was not worth anywhere near the $20,000 value placed on it by Hickman. We think it plain that notwithstanding the reticences and evasions of the officers of the First National Bank, their deliberate turning away from and shutting their eyes to the facts, Mrs. Rose's failure of memory, and the fact that death has deprived plaintiffs of the testimony of Mr. Hirsch, the undisputed evidence in the record admits of no other reasonable conclusion than that the banks either personally or through the lawyers, knew or were charged with knowledge of Exhibit B, the January 25th statement of Mrs. Rose's assets showing an ownership of 1,768 shares of First National Bank stock, instead of 1,100, and listing as under Liabilities: "Liability to set up a trust fund under Mrs. Adler's will $20,000.", and of the arrangement by which

ed Mrs. Adler in the probation of her will, and was the attorney for the Merchants Bank, and Mrs. Fichel, Mrs. Rose, the two banks and the two firms of attorneys, were acting together to work out the assignments so that the debts would be paid and a substantial equity would be left to Mrs. Fichel and Mrs. Rose. Both Mr. Hirsch and Mr. Dent are now dead." He thus found facts from which the conclusion inevitably follows that whatever Mrs. Rose knew about the Adler Estate and trust, the banks through Hirsch and Dent, their lawyers, in drawing the joint agreement, also knew. But this is not all. He found that "the banks took over the assets in accordance with an agreement which required the parties to turn over all the assets and to submit a list of them. This was accordingly done and someone, the evidence does not show who, prepared the lists for Mrs. Rose which included 668 shares of the First National Bank stock, more than was actually delivered to the banks." He found however, that the banks did not see this list but saw one which omitted this 668 shares of stock. "The First National Bank, acting through Mr. Williamson, when it received this, and also through Mr. Colmery and through Mr. Hickman, made some inquiry about those 668 shares of stock. Mrs. Rose stated that she did not own the stock but that it had been set aside for the children. Mr. Williamson made no further inquiry about that." He also found that "the First National Bank was charged with notice that Mrs. Adler left a will by reason of the fact that Mrs. Rose received a large block of stock through the will and the transfer was made on the books of the bank to Mrs. Rose from Mrs. Adler by virtue of the will. Mrs. Rose advised them that the 668 shares of the stock in her possession was not in fact hers but belonged to the children. The bank ac-

cepted this without further inquiry and pursued the matter no further and the difficult question is whether they were justified in so accepting it as reasonably prudent men."

He further found: "That at the time she reported this financial statement, or at the time she actually turned over all of her assets to the bank, she made known to the bank,—the First National Bank & Trust Company of Vicksburg,— that she had 668 shares of stock of the bank which belonged to her two grandchildren, Audley Rose Surgi and Shirley Rose Surgi, which came to them through the will of their grandmother, Mrs. Fanny Adler, which she had not listed."

Again, he found: "When Mrs. Rose reported the assets to the First National Bank she withheld 668 shares and stated that it was for the children. The representative of the bank made no further inquiry as to why those shares were for the children but simply took her word for it and pursued the matter no further. He accepted Mrs. Rose's statement as final and received the assets from her for the trust." As to the Exhibit No. 3, which contained the sentence reading, "Liability to set up trust fund under Mrs. Adler's will, $20,000", through which is run a pencil mark and on which document there are certain pencil figures, the court held, that since the evidence fails to disclose who drew it and the banks' representatives testified and denied that they had done it, it was of no probative force. Mrs. Rose however testified that she didn't draw it, she couldn't typewrite and the evidence admits of no other reasonable inference than that either Mr. Hickman, the officer of the bank who prepared the list for her, or Mr. Hirsch, the lawyer who was in charge for all the parties in getting the agreement into shape.

Mrs. Rose, in breach of her trust undertook to clear all of the rest of her property of the charge of the trust by segregating and devoting to it property of insignificant value. Whatever question, in view of the gaps in the testimony caused, by the deaths of the lawyers, the denials of the banks' officers that they knew of Exhibit B and of the details of the Adler trust, and by Mrs. Rose's failure of memory as to who drew the papers, there may be, as to the banks' actual knowledge of and active participation in Mrs. Rose's breach of trust, there can be none as to their being charged with knowledge of it for equity [3] will not and a trier of facts may not permit the officers of the banks, under the facts admitted and testified to, to close their eyes to facts and fail to draw conclusions from them, as obvious and compelling as they are here. Especially is this so when as here, the facts have to do with dealings by a trustee with trust property which is being assigned for the benefit of creditors of the trustee, they are of such a nature as would excite an ordinarily prudent person to inquire and if he inquired, would lead him to knowledge.

We therefore agree with appellants that the whole Adler property was charged in Mrs. Rose's hands and in the hands of the banks with a trust for the payment of plaintiffs' legacies and that the banks were charged in law with actual knowledge or notice of the trust and of Mrs. Rose's breach of it. Because we do, it will not be necessary for us to consider or discuss the questions with which the briefs voluminously concern themselves, whether the instrument by which the banks took was an assignment for the benefit of creditors, a trust agreement, or a mortgage, or whether if they were without knowledge or notice of the breach of trust, they were, or could be, purchasers for value taking, as they did, for a past debt, and pursuant to a scheme of liquidation of Mrs. Rose's property, for the benefit of themselves and other creditors. As to Lester Rose and Brunini, his lawyer, we think it quite plain that judgment creditors as they are, and standing in Mrs. Rose's shoes as they did, they are not and cannot be innocent purchasers, and that to the extent that any of the property they took was charged with the trust, that is, was Adler Estate property or property with which it was commingled or into which it had gone, they took it subject to the trust. This is not to say of course that the doctrine of commingling upon which appellants so strongly rely goes to the extent they seem to press it, of charging property belonging to Mrs. Rose though it may be identified as not having come from or been confused or commingled with property of the Adler Estate merely because Mrs. Rose failed to set up a trust. The doctrine of commingling does not go that far. Indeed it goes no farther than to declare that where the trustee wrongfully mingles the trust property with his individual property in one indistinguishable mass, the beneficiary is entitled at his option, to enforce a constructive trust on the commingled property. It finds its most usual application in connection with monies and funds which in their nature have no distinguishing marks. For the same reason it applies to other kinds of property only when they cannot be distinguished from a general mass into which trust property has gone. On another trial the extent to which the property has been commingled on the one hand and may be identified on the other, can be more carefully worked out than was done on the last trial, and it will serve no useful purpose to further discuss the matter here.

The judgment was wrong. It is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

[3] Humble Oil & Refining Co. v. Campbell, 5 Cir., 69 F.2d 667; John Parker v. Foy, 43 Miss. 260, 5 Am.Rep. 484; Buck, Agent v. Paine & Raines, 50 Miss. 648; First National Bank v. Johnson, 177 Miss. 634, 171 So. 11; Newman v. Tillman, 71 Miss. 26, 13 So. 934; Jackson v. Jefferson, 171 Miss. 774, 158 So. 486.